Willie D. PHILLIPS, Horace T. Lovell, J.P. Fennell, William H. Jones, Frank Murphree, Billy R. Pinyan, Lewis O. Moore, Mildred Gaynelle McClendon, H. Glenn Gardner, Homer Weaver, Owen J. Sims, Agnes Copeland, James H. Owens, Elah M. Gurley, Larry U. Davis, Walker Shaneyfelt and R.C. Shrader, individually and on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

AMOCO OIL COMPANY, a Corp., Joe D. Bearden, and Northern Propane Gas Company, Defendants-Appellees.

No. 85-7623.

United States Court of Appeals, Eleventh Circuit.

Sept. 22, 1986.

Yearout, Hardy & Myers, P.C., J. Gusty Yearout, Deborah Braden, Birmingham, Ala., for plaintiffs-appellants.

Stephen E. Brown, Bradley, Arant, Rose & White, Ralph H. Yeilding, William B. Hairston, Jr., Engel, Hairston, Moses & Johanson, Birmingham, Ala., Barnes & Thornburg, Stanley C. Fickle, Charles E. Bruess, Indianapolis, Ind., for defendants-appellees.

Before RONEY, Chief Judge and CLARK, Circuit Judge, and DOYLE *, Senior District Judge.

CLARK, Circuit Judge:

Former employees of Amoco Oil Company's Alabama retail liquid propane gas ("LPG") business appeal from the district court's decision to grant summary judgment in favor of Amoco Oil Company ("Amoco"), Joe D. Bearden and Northern Propane Gas Company ("Norgas") on claims of breach of contract, state common law fraud and Employee Retirement Income Security Act ("ERISA") violations arising in the context of the sale of Amoco's Alabama LPG operations to Norgas. We affirm.

## I. FACTS

Appellants (the "employees") were formerly employed by Amoco in its LPG operations in Alabama. All participated in the Employee Retirement Plan of Standard Oil Company and Participating Companies (the "Standard Plan").

In May of 1979, Amoco agreed to sell its LPG operations in the southeastern United States to Norgas. The sales contract was signed on July 31, 1979 and the sale closed on September 4, 1979. Upon selling its Alabama LPG operations, Amoco completely left the retail LPG business in Alabama and therefore had no work in that area for any of the employees.

The sales contract provided that Norgas would offer employment to each regular full-time employee at his or her current salary. It further provided that retirement benefits under Norgas' retirement plan would be based on years of service with Norgas, except that continuous years of service with Amoco would be credited by Norgas for vesting purposes. Thus years of service with Amoco would not be credited for the purpose of calculating benefits or determining eligibility for early retirement. Each of the employees with vested benefits under the Standard Plan, including those who have not yet reached the age of sixty-five, opted to receive and is currently receiving an annuity from the Standard Plan.

A meeting for the Amoco employees was held on August 21, 1979 at Boaz, Alabama to explain the various Norgas benefits that would be available to the employees after the sale (the "Boaz meeting"). At the meeting, the employees were informed of the sale of Amoco's LPG operations to Norgas. They were also told that:

> On every other plan we recognize your service with Amoco. For the Retirement Plan, you must treat the day you begin work with Northern Propane Gas Company as your first day of service.

While the parties dispute whether all the employees *understood* that their years of service would not be credited by Norgas for all purposes, there is no dispute that they were told at the Boaz meeting that

* Honorable James E. Doyle, Senior U.S. District Judge for the Western District of Wisconsin, sitting by designation.

Norgas would not credit years of service with Amoco under its retirement plan. There is also no dispute that in August, 1979, the employees were given copies of a Norgas summary plan description stating that the retirement benefits they would receive would depend on service and pay with Norgas. The employees began employment with Norgas on September 4, 1979, the closing date of the sale to Norgas.

On September 4, 1980, the employees filed suit against Amoco, Bearden and Norgas in an Alabama state court. The case was eventually removed to federal district court. After eight amendments, the employees' complaint finally contained state breach of contract claims, state fraud and conspiracy to defraud claims, and various ERISA claims against Amoco and Norgas.[1]

Norgas and Amoco filed separate motions for summary judgment. On February 25, 1985, the district court heard oral argument on the motions and, at the close of argument, orally ruled that it was granting Norgas' motion and taking Amoco's motion under advisement. On June 18, 1985, 614 F.Supp. 1094, the district court issued its memorandum opinion granting all motions for summary judgment in favor of Amoco and Norgas.

On June 28, 1985, the employees filed a motion to reconsider or vacate the judgment and for recusal of District Judge Seybourn H. Lynne under 28 U.S.C. § 455(a). The employees claimed that an appearance of impropriety arose when the law clerk who had drafted Judge Lynne's memorandum opinion accepted employment with the firm representing Norgas in this litigation prior to drafting the opinion. There is no dispute that the employees' attorneys were informed of the fact that Judge Lynne's sole law clerk had accepted employment with the law firm representing Norgas in January of 1985, seven months before they requested recusal. Judge Lynne denied the recusal motion on the ground it was not timely and that the em-

ployees had not been denied due process of law. The employees appeal from the summary judgments in favor of Amoco and Norgas and from the denial of their recusal motion.

## II. ISSUES

The employees make the following arguments with respect to their state law claims on appeal: (1) that Amoco breached lifetime employment contracts with its employees when it sold its Alabama LPG operations to Norgas; (2) that their claim that Amoco fraudulently assured them of lifetime employment with Amoco even while negotiating the sale of the business is not barred by an Alabama statute of limitations; (3) that their claim that Amoco and Norgas fraudulently concealed the effect of the sale on credit for years of service toward retirement benefits is not preempted by ERISA. The employees also argue that Amoco and Norgas bargained away credit for years of service with Amoco when they negotiated the sales contract, thereby violating the following provisions of ERISA: (1) the provision that years of service with predecessor employer be credited by successor employer (29 U.S.C. § 1060(b)(2)); (2) the provision setting forth a fiduciary duty to act solely for the benefit of plan beneficiaries (29 U.S.C. § 1104); (3) the anti-discrimination provision (29 U.S.C. § 1140); (4) the prohibited transactions provision (29 U.S.C. § 1106); (5) the provision governing early retirement benefits (29 U.S.C. § 1056); (6) the criminal fraud provision (29 U.S.C. § 1141); and (7) the disclosure provisions (29 U.S.C. §§ 1022, 1024). Finally, the employees argue that Judge Lynne abused his discretion in failing to vacate summary judgment in favor of Norgas and to recuse himself in light of the relationship between his law clerk and Norgas' attorneys.

## III. ANALYSIS

The district court's opinion in this case is comprehensive, thorough and well rea-

---

**1.** Claims against Bearden are not discussed separately in the district court's memorandum opinion or in the parties' briefs to this court. As Bearden is an agent of Amoco, our discussion of the claims against Amoco applies to the claims alleged against Bearden. We will not further refer to Bearden in this opinion.

soned. *Phillips v. Amoco Oil Co.*, 614 F.Supp. 694 (N.D.Ala.1985). Where, as here, a litigant adopts what might be called a "shot gun" approach and invokes every possible cause of action, no matter how tangentially related to the particular context of the case, a few claims are bound to be so obviously inappropriate that little discussion is warranted to dispose of them. The district court's opinion treats even these claims carefully and exhaustively. This court has benefitted from that effort.

Unfortunately, the employees have not narrowed their arguments for appeal as they might have. Rather than pointing out the error in the reasoning that led the district court to reject their positions, they have restated the arguments they made to the district court in the first place. Thus it happens that, with respect to many of the arguments presented on appeal, we have little, if anything, to add by way of explanation of our decision that has not been stated by the district court. For that reason, although we have carefully and independently considered the employee's legal arguments, we will not duplicate the district court's efforts by explaining our decision with the same thoroughness and detail. We write briefly to address various arguments made on appeal and to make clear our understanding of the scope of the district court's reasoning.

### A. State Law Claims

#### 1. Breach of Life-Time Employment Contracts

▆ The employees argue that their life-time employment contracts with Amoco were breached when Amoco sold its business to Norgas. However, even where a life-time employment contract is legally enforceable, Alabama law provides that the contract remains in effect only as long as the employer remains in the business for which the employee was hired and needs the particular services the employee was hired to perform. *See, e.g., Bates v. Jim Walter Resources, Inc.*, 418 So.2d 903, 906 (Ala.1982). It is undisputed that Amoco completely abandoned the retail LPG business in Alabama when it sold its operations to Norgas. The employees present no ar-

gument on appeal that was not persuasively rejected by the district court. In fact, they conceded at oral argument that they have no breach of contract claim that is not identical, at bottom, to the fraud claim addressed in the next section. The district court correctly granted summary judgment in favor of Amoco on this claim.

#### 2. Fraudulent Misrepresentation With Respect to Continued Employment With Amoco

The employees allege that Amoco continued to represent to them that they would be employed for life with Amoco's Alabama LPG operations even as Amoco negotiated the sale of the business to Norgas. They believe that Amoco fraudulently induced them to remain employed with Amoco in order to make the business a more attractive going-concern to Norgas. The district court granted summary judgment with respect to this claim on the ground it was barred by a one-year statute of limitations, holding that the employees' cause of action accrued when they learned that Amoco would sell the business and terminate their employment contracts, in August, 1979.

The issue on appeal is whether the district court correctly determined that the employees' cause of action accrued, and the period of limitations began to run, when they learned that Amoco was to sell the business. There is no dispute that all the employees learned that the LPG operations would be sold no later than August 21, 1979. They did not file their suit until September 4, 1980. They insist that their cause of action did not accrue until their employment with Amoco was actually terminated on September 4, 1979, but have cited no case that supports this statement of the law.

The employees' attorney insisted repeatedly at oral argument that the injury associated with this type of claim occurs upon actual termination and that the cause of action does not therefore accrue until that point, relying on *Brotherhood of Locomotive Firemen & Enginemen v. Hammett*, 273 Ala. 397, 140 So.2d 832 (1962).

That case, however, was not a fraud case but involved malicious interference with employment, a cause of action that obviously does not arise until the actual interference or termination occurs.

■ In contrast, the employees' cause of action sounds in fraud and their injury was by definition the detrimental reliance that occurred prior to their discovery that they had been victims of misrepresentation. According to Alabama law, a fraud cause of action accrues, and the one year statute of limitations begins to run, at the discovery of the facts constituting the fraud. Such discovery occurs when the plaintiff should have discovered facts that would provoke a person of ordinary prudence to inquiry. *Colafrancesco v. Crown Pontiac-GMC, Inc.,* 485 So.2d 1131 (Ala.1986). In this case, discovery took place no later than August 21, 1979.

That the employment contracts did not actually terminate until September 4, 1979, makes no difference. The statute of limitations begins to run when the plaintiff knows or should know that the employer does not intend to perform as promised. *Retail, Wholesale and Department Store Employees Union, Local 453 v. McGriff,* 398 So.2d 249, 252 (Ala.1981). *McGriff* involved, as does the instant case, the claim that the employee was induced to work for the employer by a promise of pension benefits upon having remained on the payroll for a certain number of years. The Alabama Supreme Court held that the employee's fraud cause of action arose when he knew or should have known that the employer did not intend to provide the promised benefits, not at the point he was actually denied the benefits. The district court correctly granted summary judgment in favor of Amoco on the ground that this particular fraud claim is barred by the statute of limitations.

3. *Fraudulent Failure to Disclose Effect of Sale on Retirement Benefits*

The employees claim that Amoco and Norgas deprived them of an opportunity to negotiate with Norgas to credit their years of service with Amoco for the purposes of calculating retirement benefits and induced them to remain employed with Amoco by failing to disclose the disadvantageous terms of the sale. The district court held that this state common law fraud claim was preempted by ERISA.

ERISA expressly provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The employees argue that ERISA does not preempt state common law fraud actions involving pension plans. Without expressing any opinion as to whether ERISA preempts other fraud claims arising under state common law, we hold that ERISA preempts Alabama's common law fraud cause of action insofar as it recognizes the particular type of claim raised by the employees in this case.

■ The Supreme Court has addressed the scope of ERISA preemption in two cases. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). In neither case did the Supreme Court address the question whether ERISA preempts state common law causes of action. However, the opinions are helpful for their general discussions of the scope of ERISA preemption.

The Supreme Court in *Shaw* explained that Congress used the words "relate to" in their broad sense. *Shaw* 463 U.S. at 98, 103 S.Ct. at 2900. Thus, ERISA preemption is not limited to those state laws specifically designed to affect employee benefit plans. Nor does it preempt only state laws dealing with the particular subject matters covered by ERISA, such as reporting, disclosure and fiduciary responsibility. *Id.* Most importantly, for the purposes of this case, 29 U.S.C. § 1144(c)(1) expressly explains that the term "state law" in the preemption provision includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." It is clear, then, that ERISA preempts state common law causes of ac-

tion as they relate to employee benefit plans.[2]

■ We agree with the district court that the particular fraud claim raised by the employees in this case is preempted by ERISA. The action alleged by the employees to have been fraudulent was the failure to disclose the terms of the Norgas benefit plan. The claim depends on the existence of a duty to disclose, which necessarily depends on an interpretation of the fiduciary duties imposed by ERISA. The claim also runs directly into ERISA's disclosure provisions. The compensatory damages specifically sought by the employees for the fraud claim are "compensatory damages in the form of loss of employee benefits, including but not limited to, the value of the following benefits: early retirement, retirement, life and health insurance, vacation, and saving plan benefits ..." Pretrial Order at 17. This request for damages demonstrates that the employees' fraud claim not only "relates to" an employee benefit plan but is at its core an ERISA claim.

The employees protest that to hold that ERISA preempts this fraud claim, while also holding that ERISA does not prohibit the wrong the employees feel they have suffered, leaves a "gap" in the law. That is exactly the result that obtains when Congress determines that federal law should govern a broad area to the exclusion of state regulation and chooses not to prohibit actions formerly prohibited by state law. It is the very conflict between the federal scheme and state law that is to be avoided through preemption. To argue that Congress has created a "gap" in the law does not undermine the reasoning on which a finding of preemption is based. We turn now to the employees' ERISA claims.

**B.** *ERISA Claims*

**1.** *Statutory Requirement that Years of Service With Predecessor Employer be Credited by Successor Employer*

29 U.S.C. § 1060(b) provides in relevant part:

(1) in any case in which the employer maintains a plan of a predecessor employer, service for such predecessors shall be treated as service for the employer, and

(2) in any case in which the employer maintains a plan which is not the plan maintained by a predecessor employer, service for such predecessor shall, to the extent provided in regulations prescribed by the Secretary of the Treasury, be treated as service for the employer.

There is no dispute that § 1060(b)(2) is the section applicable in this case; Norgas does not maintain the plan of Amoco but maintains its own retirement plan. Although the Secretary of the Treasury has promulgated no regulations requiring that a successor employer give credit for years of service with a predecessor employer, the employees contend that § 1060(b)(2) requires Norgas to credit their years of service with Amoco for the purposes of calculating benefits and determining eligibility for early retirement.

■ The district court determined that the statutory language and legislative history of this section make clear that Congress intended to leave the question whether to require such credit to the Secretary of the Treasury and that no such credit would be required absent the promulgation of regulations to that effect. The employees make no effort to shed light on any particular error committed by the district court

---

**2.** We emphasize that ERISA preempts such causes of action only as they relate to employee benefit plans. Our holding with respect to preemption is therefore limited by the facts of this case. Hence, while we note that other courts have held ERISA to preempt state common law causes of action, we acknowledge that these opinions are useful only to the extent they support the general proposition that ERISA may preempt state common law causes of action.

*See, e.g., Authier v. Ginsberg,* 757 F.2d 796, 799–802 (6th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1356–57 (9th Cir. 1984), *cert. denied,* — U.S. —, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). For additional cases see the district court's opinion, *Phillips,* 614 F.Supp. at 708.

but simply reassert the argument that the phrase "to the extent provided in regulations prescribed by the Secretary of the Treasury" should be read out of the statute. This we cannot do.

We will not further belabor this dispute. As set forth in the district court's opinion, *Phillips*, 614 F.Supp. at 713–14, the legislative history of § 1060(b)(2), Department of Labor regulations defining "years of service" and the only case interpreting those regulations all lead to the conclusion that ERISA does not require a successor employer to credit years of service with the predecessor employer where the successor does not maintain the benefit plan of the predecessor. Remaining cautious about reading such a requirement into any other provision of the statutory scheme in the face of Congressional intent to leave this question of policy to the Secretary of the Treasury, we nonetheless go on to address the rest of the employees' ERISA claims.

### 2. *Fiduciary Duty*

29 U.S.C. § 1104 provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." The employees argue that Amoco breached its fiduciary duty in negotiating a higher sale price for its LPG operations by bargaining away credit for their years of service with Amoco. Norgas is argued to be liable, although not a fiduciary, for aiding a fiduciary to breach its duty under ERISA.

■ The district court held that the fiduciary provisions of ERISA are not implicated in the sale of a business merely because the terms of the sale will affect contingent and non-vested future retirement benefits. This holding is supported by the fact that ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued. Moreover, the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets. *See Sutton v. Weirton Steel Divi-*

*sion of National Steel Corp.*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), *aff'g*, *Dhayer v. Weirton Steel Division of National Steel Corp.*, 571 F.Supp. 316 (N.D.W.Va.1983) and *Sutton v. Weirton Steel Division of National Steel Corp.*, 567 F.Supp. 1184 (N.D.W.Va.1983). We emphasize that the only "interests" at stake in this case are contingent and non-vested future retirement benefits. There is no dispute that Amoco has fulfilled and continues to fulfill its obligations with respect to vested retirement benefits earned under the Standard Plan.

### 3. *Discrimination*

29 U.S.C. § 1140 provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [covered by ERISA] ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or ERISA]....

The employees argue that Amoco and Norgas unlawfully discriminated against them for the purpose of interfering with the attainment of rights to which they may have become entitled under the Standard Plan.

■ As the district court held, this provision simply does not prohibit the sale of a going business. Furthermore, as we noted above, the employer may terminate previously offered contingent non-vested benefits. Finally, as the entire business was sold in this case, there could not have been any discrimination among employees.

### 4. *Disclosure Requirements*

■ 29 U.S.C. § 1022(a) requires that a plan description containing the circumstances that may result in disqualification, ineligibility or denial or loss of benefits be provided to plan participants. The employees contend that Amoco violated this sec-

tion by failing to disclose in its plan description the possibility that sale of the business might result in the loss of future benefits. While the plan description does not refer specifically to sale of the business, it does notify employees that a "terminated employee" will not be entitled to full benefits. A terminated employee is defined therein as one who has not retired from the company. The employees were thereby notified that any event causing them to leave their employ with Amoco prior to retirement would result in receipt of less than full benefits. As the description of the Standard Plan adequately notified employees that an event such as the sale of a business would result in termination, Amoco complied with the disclosure requirement.[3]

### 5. Miscellaneous Additional Claims

The employees raise several claims under provisions of ERISA that are patently inapplicable to the facts of this case.

 By its terms, 29 U.S.C. § 1106, the "prohibited transactions" provision, applies only to transactions to which the plan itself is a party or in which the monies, property or fiscal assets of the plan are involved. Such is not the case here. Section 1056 sets forth certain requirements that must be met should a plan provide for early retirement benefits, but it does not confer upon plan participants any substantive right to continued employment in order to qualify for early retirement benefits. Section 1141 is a criminal statute that provides no private right of action but allows only for criminal prosecution by the United States Attorney General. Finally, § 1024 requires that plan modification be reported to the Secretary of the Treasury and is inapplicable in this case because there was no modification of the Standard Plan.

### C. Appearance of Impropriety

 The district court's denial of the employees' motion to reconsider or vacate or for recusal is due to be affirmed for

several reasons. First, the employees' attorneys knew about the law clerk's employment with the firm representing Norgas six to seven months before moving for recusal. Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits. *United States v. Slay*, 714 F.2d 1093, 1094 (11th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). The employees' argument that they were not aware of the facts supporting recusal until they realized that the law clerk had drafted the memorandum opinion explaining summary judgment in favor of Norgas is disingenuous. They were well aware that the law clerk was actively involved with the case and that he, as Judge Lynne's only law clerk, could be the only person who would work with the judge to draft the opinion. Clearly the facts giving rise to any appearance of impropriety were known by the employees' attorneys long before the law clerk actually began drafting the opinion.

 Several factors lessen any appearance of impropriety and ensure that the due process rights of the employees were not violated. The case had been before the judge for many years and many clerks had worked on it. By the time the law clerk at issue was hired, the judge had formed the conclusion that the employees' claims were without merit. Furthermore, the court granted Norgas' motion for summary judgment at oral argument, before the law clerk began work on the opinion justifying the decision. Additionally, the claims against Norgas were meritless, if not frivolous. Finally, because this case was decided on summary judgment motions, the court was not called upon to resolve conflicts in evidence, weigh the credibility of witnesses or exercise judicial discretion. The district court's decision has been subjected to de novo review by this court.

---

**3.** Moreover, it is not clear that § 1022(a) requires that a plan description disclose the circumstances under which inchoate, non-vested

contingent interests in future benefits might be cut off.

Judge Lynne's decision not to vacate the judgment and not to recuse himself was well within his discretion.

For the foregoing reasons, the summary judgments in favor of Amoco, Bearden and Norgas are

AFFIRMED.