Michael G. TYSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 49A02–9203–CR–129.

Supreme Court of Indiana.

Oct. 15, 1993.

Alan M. Dershowitz, Cambridge, MA, for appellant.

Pamela Carter, Atty. Gen., Lawrence M. Reuben, Chief Deputy Atty. Gen., Matthew R. Gutwein, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Tyson has filed an application by his counsel Alan M. Dershowitz asking me to vacate my earlier disqualification and cast a vote now on the petition to transfer denied by this Court on September 22, 1993. I have considered same along with the other documents filed before me as follows:

1. Affidavits of Alan M. Dershowitz, Carolyn A. Cohen, and Stephen Joel Trachtenberg;

2. An acknowledgement of the Attorney General of Indiana;

3. Response by Alan M. Dershowitz;

4. A statement of additional authority filed by Alan M. Dershowitz; and

5. Various other letters of Dershowitz and the Attorney General.

In considering this application, I have reviewed the earlier decision I made not to participate in this appeal and believe it best to explain the reasons for that decision in acting on the application by Mr. Dershowitz.

Of course, I participated in this case during an earlier stage of the proceedings. Indeed, I authored the Court's opinion on whether Mr. Tyson should be granted bail pending appeal. *Tyson v. State* (1992), Ind., 593 N.E.2d 175. As preparation of the record and briefing proceeded before the Indiana Court of Appeals during the summer of 1992, I fully expected to participate in whatever proceedings might eventually come before this Court.

On October 3, 1992, an event occurred which caused me to consider whether I should disqualify.

My wife, Amy W. MacDonell, accompanied me to New Haven, Connecticut, for the twentieth reunion of the Yale Law School Class of 1972, held October 2–4, 1992. During this reunion, the school staged a large luncheon in the University Commons for people from all the classes then observing reunions. During the course of the lunch, my wife made a trip to the ladies' room. Upon her return, she told me that she had just introduced herself to Alan Dershowitz, by then counsel of record for Mr. Tyson. She said she had told Dershowitz that she had seen him argue the bail request before the Indiana Court of Appeals and that he needed to be better attuned to the Indiana way of approaching things as this appeal progressed. In particular, she said she told him his declaration that he would resign as counsel if Tyson skipped bail was not the right approach. The Dershowitz affidavit partly describes this conversation, though it varies in several respects from my wife's description. Obviously, I based my decision on my wife's account, not having seen the Dershowitz version until last month. I think it unnecessary to make any findings of fact concerning the accuracy of the Dershowitz affidavit and can even assume it true for purposes of acting on the present application.

I agree with the suggestion of the Dershowitz affidavit that the conversation was

improper. My wife is not a lawyer, and she did not fully appreciate the reasons why such conversations are considered improper. She now understands the principles underlying these rules. She regrets very much having initiated this colloquy and feels a deep sense of embarrassment about it. My own decision not to disclose the reasons for my disqualification was motivated by a desire to protect my wife from the embarrassment she would feel about public disclosure and debate concerning her conduct, innocent as it was. During October and early November 1992, I weighed the possibility of disqualifying. This is obviously an action which ought to be avoided if possible. A judge has a duty to hear and decide matters unless disqualification is required. Ind.Judicial Conduct Canon 3(B)(1).

In further assessing whether to recuse, two portions of the Indiana Code of Judicial Conduct came to mind. Canon 3(A)(4), as it then read, provided in part that a judge should "neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." Jud. Canon 3(A)(4) *reprinted in* Indiana Rules of Court 698 (West 1992) (hereinafter 1992 Jud. Canon). Canon 3(C)(1) provided in part that a judge "should disqualify himself in a proceeding in which his impartiality might reasonably be questioned." *Id.* at 700. Both these provisions were taken from the model code of the American Bar Association.

The Canon on *ex parte* communications by its terms applied only to the judge, though it seems that in the minds of most, a communication from a judge's spouse about a case pending or impending would be fairly regarded as improper. *Ex parte* communications by their nature suggest partiality. *See* Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* 149 (1990). In *Wells v. Del Norte Sch. Dist.,* 753 P.2d 770 (Colo.Ct.App.1987), even an *ex parte* contact which involved no comment about the pending case was held to constitute such an appearance of impropriety "as to vitiate the proceedings." *Id.* at 772. It was plain that the circumstances which led to my considering recusal were not initiated by either of the parties to this litigation or by me, a fact which diminished its harm. Still, the communication did involve only one side to the litigation, and I concluded that its nature played a role in the second, and more complex question, namely, whether under Canon 3(C)(1) this was a case in which my impartiality might reasonably be questioned.

The test under Canon 3(C)(1) is whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality. *Cf. Perkins v. Spivey,* 911 F.2d 22 (8th Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991). The question is not whether the judge's impartiality is impaired in fact, but whether there exists a reasonable basis for questioning a judge's impartiality. *In re Beard,* 811 F.2d 818 (4th Cir.1987). Concerns about public confidence in the judicial system underly Canon 3. *See United States v. Hollister,* 746 F.2d 420 (8th Cir. 1984). A judge has a duty to promote public confidence in the impartiality of the judiciary. Ind.Judicial Conduct Canon 2.

Several factors weighed in favor of recusing on grounds relevant to Canon 3(C)(1). First, the conversation as described in the Dershowitz affidavit and as related to me by my wife could fairly be described as one in which my wife undertook to advise Dershowitz about ways to improve his chances on appeal. Had I participated in the case and had I voted in favor of Tyson, many could have supposed that Dershowitz took my wife's advice and that my vote went with it. The harm flowing from such suspicions can easily be imagined by considering what the defense would have said had my wife advised the prosecution while the case was being appealed.

In addition, had I not recused and voted in favor of Tyson, it might have appeared that I favored Mr. Dershowitz's client so that Mr. Dershowitz would have no reason to reveal my wife's action. I would thus have saved my wife the embarrassment of

public disclosure and debate by voting for Tyson.

Both of these suspicions, possibly arising out of my further participation in the Tyson appeal, would have reflected adversely on my impartiality as a judge and on the fairness of the Court on which I sit. Substantial concerns about fairness arise when a judge who arguably should disqualify remains as a voting participant. Failure to recuse under some circumstances would deny a party due process of law. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Moreover, a judge who sits on a case notwithstanding legitimate grounds for recusal can damage public confidence in his impartiality for years to come. *See, e.g.,* Larry Margasak, *100 Law Professors Question Rehnquist's 'Intellectual Honesty'*, AP, Sept. 10, 1986, *available in* LEXIS, Nexis Library, AP File.

Indiana practice has always leaned toward recusal where reasonable questions about impartiality exist. In fact, Indiana departed from the ABA model code by omitting provisions for remittal of disqualification,* former Canon 3(D), believing that parties should not be permitted to waive grounds for recusal which the public might find warranted. All the facts and circumstances arguably presented a close case, and, in a close case where impartiality might reasonably be questioned, a judge must recuse. *Hadler v. Union Bank & Trust Co.*, 765 F.Supp. 976 (S.D.Ind.1991) (citing *Roberts v. Bailar*, 625 F.2d 125 (6th Cir.1980)).

Thus, after several weeks of assessing these circumstances, I concluded that I should disqualify. I recognize that the circumstances which I weighed as pointing toward disqualification might be weighed differently by another judge or by me with somewhat different facts.

Having reached that decision, I confronted the question of when to do so. The custom in this Court is to disqualify when a case is fully submitted.

I elected to recuse in November 1992 for two reasons. First, I knew that one of the issues in the Tyson appeal would center on the application of rules announced in *Wiseheart v. State*, 491 N.E.2d 985 (Ind. 1986), an opinion I wrote for the Court. It seemed that I should let both parties to the Tyson appeal know early on that I would not be participating, such that they could brief the case armed with that knowledge and make whatever strategic decisions they thought warranted.

Second, I believed it was important to disqualify before the Court of Appeals ruled. A recusal announced after the Court of Appeals affirmed or reversed would undoubtedly have been regarded as partially motivated by its effect on that outcome. I believed it was important to make clear that my recusal was not outcome-driven.

While these considerations motivated my decision to disqualify in November 1992, there is an additional element important to deciding the present application. Tyson's lawyers chose to seek the relief the day after the Court denied their petition to transfer, although Dershowitz appears to have understood the basis for my recusal well before that. Timeliness is important on recusal issues. "Counsel ... may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits." *Phillips v. Amoco Oil Co.*, 799 F.2d 1464 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

Dershowitz asks me to vacate my 1992 disqualification and vote on Tyson's petition *nunc pro tunc*. Indiana authority has always regarded *nunc pro tunc* as a way of placing in the record something which occurred on a given day but was omitted. *Taylor v. State* (1921), 191 Ind. 200, 132 N.E. 294. A court may not use a *nunc pro tunc* entry as a way to change a

---

* *Compare* 1992 Ind.Jud. Canon 3(D) *with* Model Code of Judicial Conduct Canon 3(F) (Am. Bar Ass'n. 1990).

ruling it made, "however erroneous, or under whatever mistakes of law or facts such ruling may have been made." *Harris v. Tomlinson* (1892), 130 Ind. 426, 433, 30 N.E. 214, 216. Thus, the question arises, even if I now believe my earlier decision erroneous, whether it would be legal and proper to take the action Tyson seeks.

 Dershowitz is correct that courts possess inherent authority to act notwithstanding their own rules. The Indiana Appellate Rules are but rules of procedure. This Court retains its constitutional authority to act notwithstanding those rules when the necessity arises. *Troue v. Marker* (1969), 253 Ind. 284, 252 N.E.2d 800.

Still, a court which acts outside its own rules does so at peril to public confidence. One need only change a few facts about this case to see the disadvantage. The Court of Appeals might have reversed Tyson's conviction and granted a new trial, and the four participating Justices divided equally. If the prosecution asked me later to come to its rescue by voting after the fact, one can assume that the defendant and his lawyers would have taken a dim view of that possibility.

Counsel for Tyson claims that this Court's denial of his petition to transfer by the vote of an equally divided Court denied his client due process of law. The Indiana Constitution prohibits appointing a substitute justice after a recusal, *State ex rel. Mass Transp. Auth. v. Indiana Revenue Bd.* (1969), Ind., 254 N.E.2d 1, and thus there is the possibility from time to time of an equally divided court. The Supreme Court of the United States uses the same rule we use and occasionally an even number of participating Justices divide equally. *See, e.g., United States v. France*, 498 U.S. 335, 111 S.Ct. 805, 112 L.Ed.2d 836 (1991) (Justice Souter not participating); *Wyoming v. United States*, 492 U.S. 406, 109 S.Ct. 2994, 106 L.Ed.2d 342 (1989) (Justice O'Connor not participating); *California v. United States*, 490 U.S. 920, 109 S.Ct. 2273, 104 L.Ed.2d 981 (1989) (Justice Marshall not participating). This has sometimes happened in cases of substantial importance. *See, e.g., State ex rel MTA v. Indiana Revenue Bd.* (1969), 251 Ind. 607, 244 N.E.2d 111.

With the benefit of a year's reflection and having reconsidered the matter now, I conclude that my decision to recuse in November 1992 was the proper ethical course. I also conclude that altering that decision now after the case has been resolved through final order would damage this Court's effort to provide a level playing field.

Accordingly, the application is denied. I direct the Clerk to open the sealed material tendered by the parties and place it in the case file.