**Karen L. MAHRDT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Defendant.**

**No. 30A01–9307–CR–242.**

Court of Appeals of Indiana,
First District.

Feb. 14, 1994.

Transfer Denied April 26, 1994.

---

Preston T. Breunig, Frank C. Capozza, Brent Westerfeld, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-defendant.

BAKER, Judge.

Today we consider the following issues: When the State refuses to comply with a discovery order permitting the accused to inspect a testing device, must the trial court exclude the State's evidence of test results? Does an ex parte communication with a member of the sheriff's office require a change of judge?

Appellant-defendant Karen L. Mahrdt claims the trial court abused its discretion by refusing to suppress a blood alcohol content (BAC) test result and by denying her motion for change of judge.

## FACTS

At approximately 12:54 a.m. on May 9, 1992, Hancock County Deputy Sheriff Clinton Ellison stopped Mahrdt after observing her vehicle cross the center line of the highway five times. Deputy Ellison noted that Mahrdt's eyes were bloodshot, her speech slurred, and her breath smelled of alcoholic beverage. Mahrdt staggered from her car and leaned against it for support. She failed three of four field sobriety tests. Deputy Ellison then transported Mahrdt to the Hancock County jail and administered two breath tests. One test result of the BAC Datamaster reflected a BAC of .14%. The other test result was not recorded.

On May 11, 1992, Mahrdt was charged with operating a vehicle while intoxicated,[1] a Class A misdemeanor, and operating a vehicle with at least .10% BAC,[2] a Class C misdemeanor. She promptly filed a request to inspect the BAC Datamaster and run a test sample. Every BAC Datamaster is required to be recertified every 180 days. 260 I.A.C. 1.1–2–2 (1992). The latest certification of the machine used to test Mahrdt was in April 1992 when it had experienced voltage problems. Recalibration and recertification destroys all evidence of whether the machine was working properly. Therefore, the trial

court conducted an expedited hearing on Mahrdt's request.

At the hearing, Mahrdt presented the police video-recording of her tests at the jail. The video showed Mahrdt blowing into the machine for fifteen seconds for the first test and thirty seconds for the second test. Her expert testified that the normal breath test cycle was eight to ten seconds. The expert explained that the length of Mahrdt's tests could indicate voltage setting problems. The trial court then granted Mahrdt's motion to inspect the machine provided that a member of the Indiana Department of Toxicology (IDT) be present. The IDT refused to attend any inspection. Mahrdt then obtained a court order requiring an IDT member to be present and monitor the inspection on August 3, 1992. When IDT Inspector Pierce appeared for the August 3 inspection, he refused to provide the secret access code and the key to the BAC Datamaster so that the tests could be conducted.

Mahrdt filed another petition to inspect the machine requesting an order to command IDT to cooperate. Another hearing was scheduled for September 15, 1992. On August 28, without notifying the parties, the trial judge telephoned the Hancock County Sheriff's Office to reschedule the inspection. During this conversation, the trial judge learned that the IDT had recertified the Datamaster on August 3, 1992, the same day Inspector Pierce had refused to cooperate with Mahrdt's inspection. The trial court informed the parties of this information in his denial of Mahrdt's petition for reinspection.

On October 7, 1992, Mahrdt filed a motion to suppress her test result. After a hearing, the trial court denied the motion to suppress. On March 16, 1993, Mahrdt filed a motion for a change of judge, claiming bias due to the court's ex parte communication with a member of the sheriff's office. Following the denial of her motion for a change of judge, Mahrdt filed this interlocutory appeal, pursuant to Ind.Appellate Rule 4(B)(6), on both the suppression and change of judge issues.

1. IND.CODE 9–30–5–2 (1992).

2. IND.CODE 9–30–5–1 (1992).

## DISCUSSION AND DECISION [3]

### I. Suppression of Test Results

Mahrdt argues that the trial court abused its discretion by refusing to suppress the test results because the State prevented her from testing the machine numerous times in defiance of court orders and destroyed any possible exculpatory evidence by recertifying the machine before she could inspect it. The State denies any violation of the discovery orders.

■ The State contends that the court merely ordered the IDT inspector to "monitor" the inspection and did not require him to assist or participate in the testing. This claim lacks merit. The trial court had granted Mahrdt's request to run a sample upon the machine in the presence of an IDT agent. In other words, the trial court ordered the State to allow Mahrdt to inspect and run a sample on the machine, which was in the State's possession and control. The State violated the first discovery order when the IDT inspector refused to be present to allow Mahrdt to conduct an inspection. After this, the trial court ordered that an IDT inspector be present to monitor Mahrdt's inspection. The State violated this second discovery order when the IDT inspector denied Mahrdt access to the BAC Datamaster by refusing to provide the access code and key.

Additionally, the State incredulously defends the IDT inspector's refusal by asserting:

> "[T]he State did not deny Mahrdt the opportunity to inspect the BAC Datamaster machine. There is no evidence that Mahrdt was denied access to the BAC Datamaster machine. In fact, Mahrdt's expert had an opportunity to run tests on the machine but refused to do so."

Appellee's Brief at 13. Although the State posits that Mahrdt's expert could have attempted to test the machine without the access code and key, Mahrdt's expert testified that any attempt to do so could damage the machine. The State also speculates that Mahrdt could have tested the machine by "having a person with a known blood alcohol content submit a breath sample for analysis by the machine." *See* Appellee's Brief at 14. We reject this risible suggestion by simply noting the discovery order did not limit the testing methods available to Mahrdt's expert.

Also, the State's suggestion that Mahrdt intended to tamper with the machine instead of testing its accuracy is not well taken. The trial court's order for the IDT agent to be present would inhibit any tampering. The record is clear that the State's refusal to provide the access code and key effectively denied Mahrdt access to the machine in order to run a test sample. In sum, the State violated the discovery orders.

Mahrdt argues that in light of the State's violations, the trial court abused its discretion by denying her motion to suppress the suspect test result.

■ Generally, a trial court has wide discretion in deciding whether remedial measures are warranted where there has been a failure to comply with discovery. *Vanway v. State* (1989), Ind., 541 N.E.2d 523, 527. Exclusion of evidence may be appropriate for flagrant and deliberate noncompliance. *Id.* Absent clear error and resulting prejudice, the trial court's determinations as to violations of discovery orders and sanctions should not be overturned. *Id.*

■ At the discovery hearing, Mahrdt challenged the veracity and integrity of the tests and its results through her expert's testimony utilizing the police video-recording of her breath tests. The entry of the discovery order signifies that the trial court concluded that Mahrdt had the right to examine the machine in the State's hands. That Mahrdt's .14% test result may not have been accurate is crucial to her defense against the charge for operating a vehicle with at least .10% or more BAC. *See Frias v. State* (1989), Ind., 547 N.E.2d 809, 813 (accused must demonstrate materiality of evidence of which he seeks discovery).

■ The State's burden of proving that the defendant was operating the vehicle with at least .10% BAC was made easier with the enactment of IND.CODE 9–30–6–15 (1992),

---

**3.** We heard oral argument on this case on January 31, 1994.

which created a rebuttable presumption that a chemical test result of at least .10% BAC taken within a certain period of time indicates that the defendant had at least .10% BAC at the time of operating. One method of rebutting the presumption is by showing that the testing device was not working properly. *See Keyes v. State* (1990), Ind.App., 559 N.E.2d 1216, 1218. Therefore, the State's refusal to comply with the discovery orders foreclosed an opportunity for Mahrdt to rebut the presumption that she had .14% BAC at the time of operating. In addition, because a chemical test result of at least .10% BAC is prima facie evidence of intoxication, the uncertainty of the accuracy of the machine's .14% reading is also material to the charge of operating a vehicle while intoxicated. Our supreme court has stated:

> A serious breach of duty occurs when the prosecution willfully or intentionally, when unjustified by a public policy, obstructs the access of the defense to material evidence in its possession. It is likewise a serious breach when through lack of vigilance the negligent destruction or withholding of material evidence by law enforcement officers or the prosecutor occurs. In such instances grounds for reversal may exist.

*Turnpaugh v. State* (1988), Ind., 521 N.E.2d 690, 692–93 (citations omitted). Since such misconduct may justify the reversal of a conviction, the significance of such misconduct in the posture of an interlocutory appeal is as great; exclusion of the evidence should be forthright upon a showing of prejudice from the State's violation of discovery orders. Mahrdt has shown prejudice resulting from the State's actions; therefore, we find the trial court erred by denying her motion to suppress the test result.

## II. *Change of Judge*

Secondly, Mahrdt argues that the trial judge abused his discretion by 1) failing to recuse himself upon his ex parte communication with a member of the Hancock County Sheriff's Office, and 2) denying her motion for a change of judge based upon the same allegation. She maintains the trial judge violated the Indiana Judicial Conduct Canons 2 and 3 when he telephoned the sheriff's office to reschedule an inspection of the BAC Datamaster.

Jud.Canon 2 provides that a judge shall avoid impropriety and the appearance of impropriety in all of his activities. Jud.Canon 3 states that a judge shall perform his duties impartially and diligently. Section 3(B)(8) specifically prohibits a judge from initiating, permitting, or considering ex parte communications concerning a pending proceeding. However, the canon allows ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits. This exception is conditioned upon the judge's reasonable belief that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and the judge must promptly notify the parties of the substance of the ex parte communication and allow them an opportunity to respond. Jud.Canon 3(B)(8)(a)(i) and (ii). Furthermore, Jud.Canon 3(E) requires a judge to disqualify himself where his impartiality might reasonably be questioned.

■ Mahrdt relies upon Chief Justice Shepard's recusal statement in *Tyson v. State* (1993), Ind., 622 N.E.2d 457, to support her argument that the trial judge was required to recuse himself. In *Tyson*, Chief Justice Shepard set forth the test for recusal under Canon 3(C)(1), now 3(E), as: "whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality." *Id.* at 459. The question is not whether the judge's impartiality is impaired in fact, but whether there exists a reasonable basis for questioning the judge's impartiality. *Id.* In *Tyson*, Chief Justice Shepard recused himself from the case after his wife made an ex parte communication with Tyson's attorney. *Id.* at 458–59. The circumstances in *Tyson* differ greatly from those present here.

■ Mahrdt mischaracterizes the communication as one between the trial judge and the State's primary witness, the Hancock County Sheriff, about the key physical evidence in the case. The judge called the sheriff's office to inquire when the BAC Datamaster was scheduled to be recertified so that he could set an inspection date before

that date pursuant to Mahrdt's motion. Record at 220–21. The judge does not know with whom he spoke at the sheriff's office. Record at 220. After the judge was informed that the machine had already been recertified, he denied Mahrdt's motion for inspection since it would be futile. The ex parte communication can be viewed reasonably only as an administrative one. It did not create the appearance of impropriety. Under the exception to Jud.Canon 3, the trial judge's communication was not improper.

Regarding Mahrdt's motion for change of judge, she contends that the trial judge was biased based upon his ex parte communication, his denial of her motion to suppress before she filed a court-scheduled brief on the matter, his failure to set hearings immediately on her motions to inspect, his setting of a hearing despite Mahrdt's federal trial schedule conflict, and his failure to enforce the discovery orders.

■ In a criminal proceeding, we review the denial of a change of judge motion for a clear abuse of discretion. *Harrington v. State* (1992), Ind., 584 N.E.2d 558, 561. Mahrdt must demonstrate actual bias. *See Leisure v. Leisure* (1992), Ind.App., 589 N.E.2d 1163, 1169, *adopted in part*, 605 N.E.2d 755. We have found that the ex parte communication was a proper administrative action, and we see no evidence of prejudice against Mahrdt by the judge's contact which was intended to facilitate her motion for inspection.

■ We note that the trial court attempted to obtain the State's compliance with its initial discovery order by issuing a second order commanding the IDT inspector to be present for the August 3 inspection. Although the trial court did not sanction the State for denying Mahrdt's inspection, we have determined that it erred by denying Mahrdt's motion to suppress the test result. Nonetheless, we do not view this error as reflecting bias.

■ Mahrdt's remaining allegations of bias are based upon the court's adverse rulings. Adverse rulings and findings by a trial judge are not sufficient reasons to believe a judge has a personal bias or prejudice *per se.*

*Taylor v. State* (1992), Ind., 587 N.E.2d 1293, 1303. Because Mahrdt has not established actual prejudice, we find no abuse by the trial court in its denial of the motion for change of judge.

## CONCLUSION

Because the trial court abused its discretion by denying Mahrdt's motion to suppress the test result, we reverse the trial court's denial and remand with instructions for the trial court to exclude the test result from evidence at the trial, currently scheduled for March 10, 1994. We affirm the trial court's denial of the motion for change of judge. We deny Mahrdt's request for reimbursement of costs under Ind.Appellate Rule 15(H). *See State v. Puckett* (1988), Ind.App., 531 N.E.2d 518, 527 (State not liable for costs).

*Judgment affirmed in part, reversed in part, and remanded.*

NAJAM and HOFFMAN, JJ., concur.