In the Matter of Michael A. WILKINS.

No. 49S00–0005–DI–341.

Supreme Court of Indiana.

Jan. 3, 2003.

Ronald E. Elberger, Robert B. Clemens, Bose McKinney & Evans, G. Daniel Kelley, Jr., Thomas E. Mixdorf, Ice Miller, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

RUCKER, Justice.

Respondent has moved that I disqualify myself from participation in this case. More precisely, he has filed a petition for rehearing from this Court's 3–2 decision sanctioning him for violating Indiana Professional Conduct Rule 8.2(a). In part, respondent seeks rehearing "in order for Justice Rucker to address whether recusal is appropriate in light of his participation on the Court of Appeals' panel in *Michigan Mutual Insurance Company v. Sports, Inc.*, 698 N.E.2d 834, 845 (Ind.Ct. App.1998)." Consolidated Pet. for Reh'g and Mot. for Justice Rucker to Recuse at 8.

To place respondent's motion in context, a brief summary of the facts is appropriate. In a lawsuit against Michigan Mutual Insurance Company alleging bad-faith denial of insurance coverage, a jury awarded compensatory and punitive damages to Sports, Inc. The trial court entered judgment on the jury's verdict, and on review the Indiana Court of Appeals affirmed the judgment. I was a member of the Court of Appeals at that time, and along with Judges Darden and Garrard I served on the panel assigned to the case. Judge Darden wrote the opinion and Judge Garrard concurred. I concurred in the result—neither joining in the reasoning or rationale of the opinion, nor writing a separate opinion of my own.

Michigan Mutual did not seek rehearing of the Court of Appeals' opinion. Rather, represented by the respondent and an attorney from the State of Michigan, Michigan Mutual filed a petition to transfer in this Court. In the petition respondent asserted that the Court of Appeals' opinion materially misstated the record by making affirmative misstatements of fact. In his supporting brief respondent amplified his assertion with the following statement:

> The Court of Appeals' published Opinion in this case is quite disturbing. It is replete with misstatements of material facts, it misapplies controlling case law, and it does not even bother to discuss relevant cases that are directly on point. Clearly, such a decision should be reviewed by this Court. Not only does it work an injustice on appellant Michigan Mutual Insurance Company, it establishes dangerous precedent in several areas of the law. This will undoubtedly create additional problems in future cases.

Br. in Supp. of Appellant's Pet. to Trans. at 1.

> Indeed, the Opinion is so factually and legally inaccurate that one is left to wonder whether the Court of Appeals was determined to find for Appellee Sports, Inc., and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law· supported its decision).

*Id.* at n. 2. On March 5, 1999, the Indiana Supreme Court denied appellant's petition to transfer. *Mich. Mut. Ins. Co. v. Sports, Inc.*, 706 N.E.2d 555, 556 (Ind.1999). The Court also entered an order striking Michigan Mutual's brief as a "scurrilous and intemperate attack on the integrity of the Court of Appeals." *Id.* at 555. I joined this Court thereafter on November 19, 1999.

On May 30, 2000, the Disciplinary Commission of the Supreme Court of Indiana filed a complaint against respondent Michael A. Wilkins. Based on the above quoted portions of the Michigan Mutual transfer brief, the Commission alleged that respondent violated Rule 8.2(a) of the Rules of Professional Conduct.[1] A hearing officer was appointed and after conducting a hearing determined that respondent violated the Rule as charged. On June 13, 2002, respondent filed a petition with this Court seeking review of the hearing officer's determination. The five-page petition did not cite the Court of Appeals' opinion in *Michigan Mutual.* In addition to the petition itself, respondent also filed a twenty-seven page supporting brief. Except for two passing references that were inserted in footnotes, respondent again did not cite the Court of Appeals' opinion in *Michigan Mutual. See* Br. in Supp. of Pet. for Review at 2 n. 3, 17 n. 31. Rather, respondent focused on the comments in his 1999 transfer brief to this

Court and the substance of the alleged Rule violation.

On October 29, 2002, this Court issued a 3–2 per curiam opinion determining that respondent violated Professional Conduct Rule 8.2(a) and imposing a sanction of a thirty-day suspension from the practice of law. *See In re Wilkins,* 777 N.E.2d 714 (Ind.2002) (Shepard, C.J., and Dickson and Rucker, JJ., concurring; Sullivan and Boehm, JJ., dissenting with separate opinions). Thereafter on November 19, 2002, respondent filed a petition for rehearing. For the first time since these proceedings began, nearly a year and a half ago, respondent moves for my recusal. He does not seek my immediate disqualification. Rather, respondent wants me to remain a part of these proceedings long enough to vote on his petition for rehearing and only then cease further participation in this case.

Citing Canon 3(E) of the Indiana Code of Judicial Conduct respondent contends that my recusal "was and is required." Consolidated Pet. for Reh'g and Mot. for Justice Rucker to Recuse at 11.[2] The Canon provides in relevant part:

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) the judge has a personal bias or prejudice concerning a party or a par-

---

1. The Rule provides:

   A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

   Ind. Professional Conduct Rule 8.2(a).

2. Respondent also cites Canon 2(A) which provides, "[a] Judge shall respect and comply with the law and shall act at all times in a

manner that promotes public confidence in the integrity and impartiality of the judiciary." Ind. Judicial Conduct Canon 2(A). In doing so, respondent provides no independent assessment of its applicability. Rather he references the "impartiality of the judiciary" component of this Canon and then shifts to a discussion of "impartiality" as the term appears in Canon 3(E)(1). *See* Consolidated Pet. for Reh'g and Mot. for Justice Rucker to Recuse at 14–16.

ty's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

Jud. Canon 3(E)(1)(a). The underlying thrust of respondent's argument is that because I served on the panel whose opinion respondent criticized, I should have disqualified myself sua sponte from hearing his disciplinary matter.

There is no question that a judge is required to disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned. The Canon demands it. In addressing those concerns the issue has been cast as "whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case." *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985). As this court has recently stated, the issue "is not whether the judge personally believes himself or herself to be impartial, but whether a reasonable person aware of all the circumstances would question the judge's impartiality." *In re Morton*, 770 N.E.2d 827, 831 (Ind. 2002).

The facts and circumstances are these. First, I was completely unaware that I had served on the underlying Court of Appeals panel. Neither before the hearing officer nor in his petition to this court for review of the hearing officer's determination did respondent ever mention that I served on the panel. Rather, at every opportunity respondent focused on the substance of the comments that provided the basis for this disciplinary action. That was my focus as well. Respondent does not reveal why he failed before now to bring this matter to my attention. However, citing to several cases in which I served on the Court of Appeals panel and sua sponte decided not to participate once a party sought transfer to this Court, respondent says that it was "a forgone conclusion that Justice Rucker would recuse." Consolidated Pet. for Reh'g and Mot. for Justice Rucker to Recuse at 9. However, each case respondent refers to in support of this assertion involved a petition to transfer from a case in which I either wrote a separate dissenting opinion, *see Bagnall v. Town of Beverly Shores*, 705 N.E.2d 213 (Ind.Ct.App.1999); or concurred outright in the majority opinion, *see In re Estate of Troxel*, 720 N.E.2d 731 (Ind.Ct.App.1999); *Dullen v. State*, 718 N.E.2d 1237 (Ind.Ct.App.1999); *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.* 714 N.E.2d 1218 (Ind. Ct.App.1999); *United States Gypsum, Inc. v. Ind. Gas Co., Inc.*, 705 N.E.2d 1017 (Ind.Ct.App.1998); *Bosecker v. Westfield Ins. Co.*, 699 N.E.2d 769 (Ind.Ct.App.1998). Unlike a petition to transfer where the Court of Appeals' opinion or decision itself is being challenged, thereby instantly revealing the composition of the panel deciding the case, the matter before this Court was different. The issue before us was not the Court of Appeals' opinion, but rather what the respondent had to say about the opinion. The composition of the panel deciding the opinion was not at all apparent, nor in my view particularly relevant. The comments themselves were at issue; and regardless of the panel members, either the comments were made "with reckless disregard as to [their] truth or falsity concerning the . . . integrity of a judge" or they were not. *See* Prof. Cond. R. 8.2(a).

In addition, by the time respondent's disciplinary matter reached this Court, I had served on the Court of Appeals for nearly nine years. During that period the Court of Appeals issued over fourteen thousand opinions, some of which, obviously, I authored, others of which I served as a member of the panel. Absent the respondent bringing to my attention that I

happened to have served on the underlying Court of Appeals panel in this particular case, I simply would have had no reason to assume my involvement. And this is especially so considering that in his brief before this Court challenging the hearing officer's disciplinary ruling, respondent chose to cite to the Court Appeals opinion only in passing in two of forty-five footnotes. Judges cannot be "call[ed] upon ... to perform the impossible—to disqualify themselves based on facts they do not know." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 861, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Here, the connection between the fact that I served on the *Michigan Mutual* panel and the fact that I participated in respondent's disciplinary action is "so attenuated that no judicial officer could reasonably be expected to identify [this] potential for recusal without the issue being raised by counsel." *Nat'l City Bank, Ind. v. Shortridge,* 691 N.E.2d 1210, 1211 (Ind.1998).

Second, respondent's failure to raise the issue of my involvement in the underlying Court of Appeals opinion implies one of three possibilities: (1) the respondent was aware that I had served on the Court of Appeals panel but decided not to press the issue because he was satisfied that I would be impartial in deciding this disciplinary matter; (2) the respondent was aware that I had served on the panel but decided to await the outcome of this Court's decision on his disciplinary matter and then seek recusal if the decision were unfavorable; or (3) the respondent himself was unaware that I had served on the panel. This latter possibility is highly unlikely given that within days of this Court's decision both local and national press were reporting it and specifically referencing my involvement in the underlying Court of Appeals opinion. *See, e.g.,* Kevin Corcoran, *Lawyer's Penalty Criticized,* The Indianapolis Star (Nov. 5, 2002) (attributing a statement to source who said "the case shouldn't have gone against Wilkins, because Justice Robert Rucker had served on the Court of Appeals panel Wilkins criticized. That should have kept Rucker from casting a deciding vote ...."), *at* http://www.indystar.com; David L. Hudson, Jr., *Footnote In Mouth: Indiana High Court Suspends Lawyer for Comments in Brief,* ABA Journal (Nov. 15, 2002) (noting "[i]n an unusual twist, Justice Robert D. Rucker, who voted with the 3–2 majority, also served on the appellate panel criticized in Wilkins' brief"), *at* http://www.abanet.org/journal /ereport/n15suspend.html; Gary Young, *Footnote Gets A Lawyer Suspended,* National Law Journal (Nov. 11, 2002) (commenting "[t]he case has drawn controversy ... because one of the judges who voted for Wilkins' suspension, Justice Robert D. Rucker, served on the Court of Appeals until 1999 and had a hand in the decision that Wilkins criticized"), *at* http://www.nlj.com.[3]

---

**3.** An observation by the 2nd Circuit Court of Appeals concerning media exposure is instructive:

> [W]ith regard to the appearance of partiality, the appearance must have an objective basis beyond the fact that claims of partiality have been well publicized.... That which is seen is sometimes merely a smokescreen. Judicial inquiry may not therefore be defined by what appears in the press. If such were the case, those litigants fortunate enough to have easy access to the media could make charges against a judge's impartiality that would effectively veto the assignment of judges. Judge-shopping would then become an additional and potent tactical weapon in the skilled practitioner's arsenal. The test, as we have stated, is one of reasonableness, and the appearance of partiality portrayed in the media may be, at times, unreasonable.

*In re Aguinda,* 241 F.3d 194, 201–02 (2d Cir. 2001).

As for possibility number two, respondent's lack of timeliness in seeking recusal is troubling. "Counsel ... may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits." *Tyson v. State*, 622 N.E.2d 457, 460 (Ind. 1993) (quoting *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir.1986)); *see also* Leslie W. Abramson, *Judicial Disqualification under Canon 3 of the Code of Judicial Conduct* 11 (2d ed.1992) (identifying two primary policy reasons for timeliness in the filing of recusal motions: (i) a party, although aware of facts that may disqualify a judge, may take a chance on obtaining a favorable trial result and then complain only if the result is unfavorable, and (ii) a motion to recuse is disruptive and delays litigation). That leaves possibility number one: respondent was aware that I had served on the Court of Appeals panel but decided not to press the issue because he was satisfied that I would be impartial in deciding this disciplinary matter. If that is in fact the case, then respondent is correct. Nothing has changed except respondent did not receive the result he anticipated.

Respondent also insists that apart from questions of partiality under Canon 3E(1), my recusal is nonetheless required because I have "personal knowledge of disputed evidentiary facts" under Canon 3(E)(1)(a). Consolidated Pet. for Reh'g and Mot. for Justice Rucker to Recuse at 16. Specifically he claims "[a]s one of the three participants in the *Michigan Mutual* panel's deliberations which must have taken place at least before and/or after the oral argument of July 9, 1998, Justice Rucker unquestionably has personal knowledge of the facts bearing upon Mr. Wilkins' statement." *Id.*

It is not at all clear to me exactly which facts the respondent is referring to. His statement was that the Court of Appeals'

opinion "is so factually and legally inaccurate that one is left to wonder whether the Court of Appeals was determined to find for Appellee Sports, Inc., and then said whatever was necessary to reach that conclusion (regardless of whether the facts or the law supported its decision)." Br. in Supp. of Appellant's Pet. to Trans. at 1 n. 2. If respondent is implying that I participated in a court conference where a part of the discussion involved ruling against his client regardless of the law and the facts, then he is mistaken. More to the point, the question is one of respondent's state of mind and of respondent's conduct. *See, e.g., In re Atanga*, 636 N.E.2d 1253, 1257 (Ind.1994). "What did Respondent know at the time he made the statements ... ? Did he have a basis upon which to make statements concerning the Court? Did the statements he made challenge the qualifications or integrity of the judge? Were the statements reckless in light of his knowledge and experience?" *Id.* (sanctioning an attorney for violating Rule of Professional Conduct 8.2(a) for among other things referring to a trial judge as ignorant, insecure, and a racist). Here, respondent fails to explain how any "facts" that I possess could have any bearing on his state of mind or further what those facts may be.

I am firmly convinced that I have fairly and impartially decided respondent's disciplinary matter. Even had I been conscious of my involvement in the underlying Court of Appeals opinion, I cannot now say that I absolutely would have disqualified myself from deciding the instant case. After all, as reflected by my "concur in result" vote, although I agreed with the majority's conclusion that the trial court's judgment affirming the jury verdict was correct, I did not agree with the majority's reasoning and rationale in reaching that conclusion. Consequently, I would not have been especially concerned about the respondent's criticism of the opinion.

Nonetheless, I acknowledge that the question is not whether I personally believe I have been impartial. Rather, it is whether a "reasonable person aware of all the circumstances" would question my impartiality. *Morton*, 770 N.E.2d at 831. And in this context a "reasonable person" has been described as "the proverbial average person on the street with knowledge of all the facts and circumstances alleged in the motion to recuse...." *In re Martin–Trigona*, 573 F.Supp. 1237, 1243 (D.Conn.1983). Echoing this sentiment one court has observed "disqualification of a judge is mandated whenever a significant minority of the lay community could reasonably question the court's impartiality." *Pennsylvania v. Druce*, 796 A.2d 321, 327 (Pa.Super.Ct.2002), *appeal granted in part*, 809 A.2d 243 (Pa.2002). In this case there is a possibility, particularly outside of the legal community, that my impartiality could be questioned. *See, e.g., United States v. Jordan*, 49 F.3d 152, 157 (5th Cir.1995) (noting that the average person on the street as "an observer of our judicial system is less likely to credit judges' impartiality than the judiciary"); *In re Mason*, 916 F.2d 384, 386 (7th Cir.1990) (observing that a lay observer would be less inclined to credit a judge's impartiality than other members of the judiciary). Because a judge has a duty to promote public confidence in the impartiality of the judiciary, *Tyson*, 622 N.E.2d at 459, and because "[c]oncerns about public confidence in the judicial system" underlie Canon 3, *id.*, out of an abundance of caution I therefore recuse myself from further involvement in this case. And I do so effective immediately declining respondent's request to consider first his petition for rehearing now pending before this Court.