106 T.C. No. 23

UNITED STATES TAX COURT

LEAR EYE CLINIC, LTD., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos. 13406-90, 19117-90,      Filed June 10, 1996.
177-91.


Gregory A. Robinson, Brad S. Ostroff, and Neil H. Hiller,

for petitioners.

Anne W. Durning, for respondent.


        Held, for purposes of determining the limitation
under sec. 415(b), I.R.C., on benefits of a plan, the
term "service with the employer" shall include service
with businesses that antedate the plan sponsor where
the transition results in a mere technical change in
the employment relationship and continuity otherwise

[1]     Cases of the following petitioners are consolidated
herewith:  Lear Eye Clinic, Ltd., An Arizona Professional
Corporation, docket No. 19117-90; and Brody Enterprises, Inc.,
docket No. 177-91.

[*]     This opinion supplements our previously filed opinion in
Citrus Valley Estates, Inc. v. Commissioner, 99 T.C. 379 (1992),
affd. in part and remanded in part 49 F.3d 1410 (9th Cir. 1995).

exists in the substance and administration of the business.

Held, further, in applying the foregoing to Lear, service with a sole proprietorship, which was incorporated and subsequently sponsored the plan, will count as service with the employer.

Held, further, in Brody Enterprises, service with an alleged sole proprietorship and a law firm, neither of which had any continuous relationship to the sponsor of the plan, does not constitute service with the employer.

SUPPLEMENTAL FINDINGS OF FACT AND OPINION

CLAPP, Judge: These cases are before the Court on remand from the U.S. Court of Appeals for the Ninth Circuit for further consideration consistent with that court's opinion. Citrus Valley Estates, Inc. v. Commissioner, 49 F.3d 1410 (9th Cir. 1995), affg. in part and remanding in part 99 T.C. 379 (1992). Subsequent to the remand of these cases, the parties filed a stipulation of facts (supplemental stipulation of facts) and briefs relating to the issue on remand.

The issue for decision on remand is whether the plan participants properly counted their previous employment towards the section 415(b) maximum benefit limitations. We hold that the participant in the Lear Eye Clinic plan properly counted his previous employment, but the participant in the Brody Enterprises plan did not.

All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to

the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

## FINDINGS OF FACT

In this opinion, we incorporate by reference the facts set out in our opinion in Citrus Valley Estates, Inc. v. Commissioner, 99 T.C. 379 (1992). We set forth and discuss in this opinion findings of fact arising from the supplemented record. We also incorporate by reference the supplemental stipulation of facts.

### Lear Eye Clinic, Ltd.

In 1975, Samuel Pallin (Pallin) commenced practice as an ophthalmic physician in Phoenix, Arizona. His practice grew over the years, offering various medical procedures performed by Pallin or other physicians in the practice. He practiced as a sole proprietor from 1975 until October 1, 1979. From sometime in 1978 through October 1, 1979, the proprietorship employed Gerald Walman (Walman) as an associate physician. On October 1, 1979, Pallin and Walman incorporated Lear Eye Clinic, Ltd.[2] (Lear). Pallin and Walman owned 51 percent and 49 percent, respectively, of the Lear stock. The administration of the medical practice and Pallin's duties and responsibilities did not change as a result of the formation of Lear. Nor did the

---

[2] Pallin and Walman incorporated the Eye Center, Ltd., and later changed the name to Lear Eye Clinic, Ltd. For convenience, the term Lear refers to the Eye Center, Ltd., as well as Lear Eye Clinic, Ltd., unless otherwise indicated.

practice's staff, physicians, or patients change due to the formation of Lear.

Effective October 1, 1984, Lear adopted a defined benefit plan (the Lear plan). Pallin was the only participant in the plan. The Lear plan's enrolled actuary used the following information for Pallin for purposes of the actuarial calculations:

|  |  |
|---|---|
| Date of birth | 5/8/41 |
| Date of spouse's birth | 4/2/46 |
| Date of hire | 10/1/79[3] |
| Date of entry into the plan | 10/1/84 |

On Form 5302, Census, attached to Form 5300, Application for Determination for Defined Benefit Plan (Form 5302), Lear declared that Pallin had 6 years of service with the employer as of September 30, 1985.

In 1985, Pallin and Walman decided to sever their individual medical practices. To accomplish this, Lear formed a subsidiary which held Walman's portion of the practice and then spun the subsidiary off to Walman. Pallin retained ownership of Lear.

On September 4, 1986, Lear received a favorable determination letter from respondent qualifying the Lear plan under section 401(a). As of September 30, 1986, Lear had 25 employees. Of those employees, all but Pallin were excluded or ineligible to participate in the Lear plan. The terms of the

---

[3] However, the actuary included Pallin's service as a sole proprietor from 1975 in his sec. 415(b) computation.

Lear plan limit the benefits payable under the plan to those allowable under section 415.

Lear adopted a money purchase plan effective October 1, 1979. The money purchase plan was restated in its entirety as of October 1, 1984, and again as of January 1, 1988.[4]

Brody Enterprises, Inc. (Brody Enterprises)

In the summer of 1969, Marvin D. Brody (Brody) began working as an estate and gift tax examiner for the Internal Revenue Service (IRS) in Chicago, Illinois. Brody worked with the IRS until May 1973. While employed with the IRS, Brody was covered by the Civil Service Retirement System. Brody was not covered by any other retirement plan from 1969 through September 1977.

From May 1973 to September 1977, Brody worked as an associate attorney with the law firm of Altheimer & Gray in Chicago, Illinois. In September 1977, Brody moved from Chicago to Phoenix, Arizona, and began working in the law firm of Ehmann & Waldman, P.C.

In late 1978 or early 1979, Ehmann, Waldman, and Brody formed Ehmann, Waldman & Brody, P.C. (EWB P.C.) with each owning one-third of the shares of the company. EWB P.C. had three retirement plans: (1) The Pension Plan, a money purchase pension plan adopted in 1971 and still in existence, (2) the Profit

---

[4]     The parties have not elaborated on the money purchase plan, and we leave it for them to determine under Rule 155 the extent, if any, to which it affects the deficiencies in these cases.

Sharing Plan, which merged with the Pension Plan on January 31, 1980, and (3) the Defined Benefit Plan (EWB P.C. Defined Benefit Plan). None of these plans is at issue in this case. In September 1978, after completing 1 year of service with EWB P.C., Brody became a participant in the Pension Plan. Brody was a participant in the EWB P.C. Defined Benefit Plan until its termination in 1984. The record does not reveal when Brody became a participant in the EWB P.C. Defined Benefit Plan. Brody has no other records or information concerning the EWB P.C. Defined Benefit Plan.

On January 31, 1983, Brody terminated his employment with EWB P.C., and EWB P.C. redeemed his stock therein.

On February 1, 1983, Brody incorporated Brody Enterprises, Inc.,[5] with Brody as its sole shareholder and employee. On June 13, 1983, Brody Enterprises adopted the Brody Enterprises Defined Benefit Pension Plan (the Brody Enterprises plan), effective February 1, 1983. The Brody Enterprises plan is at issue in docket No. 177-91. The terms of the Brody Enterprises plan limit the benefits payable under the plan to those allowable under section 415.

On Form 5302, Brody Enterprises declared that Brody had 2 years of service with the employer as of May 31, 1985.

---

[5] Brody incorporated Marvin D. Brody, P.C., and later changed the name to Brody Enterprises, Inc. For convenience, we refer to Brody Enterprises throughout this opinion.

On November 1, 1986, Ehmann, Waldman & Brody, P.A. (EWB P.A.) was formed. Brody was not a shareholder or an officer of EWB P.A. The record does not reveal who formed EWB P.A. Sometime around November 1, 1986, Brody ceased employment with Brody Enterprises and entered into an employment contract with EWB P.A. On November 1, 1987, Brody terminated his employment with EWB P.A.

OPINION

Each of petitioners' plans was a small defined benefit pension plan. A defined benefit pension plan provides a participant at retirement with the benefit stated in the plan. The costs of benefits payable from such plans are funded incrementally on an annual basis over the preretirement period. Secs. 404, 412. Contributions made to the plans, within certain limits, are deductible. Sec. 404(a)(1). Earnings on the contributions are not taxed as they accumulate. Sec. 501(a). Plan assets are taxed to participants only as they are paid out as benefits. Sec. 402(a)(1). The payment of benefits under a qualified plan is limited. Sec. 415. These cases focus on the limitations in section 415.

Section 415 was added to the Internal Revenue Code by section 2004(a)(2) of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, 979. The enactment of ERISA was a legislative attempt to assure equitable and fair administration of pension plans and to remedy problems

that had arisen, which prevented many of those plans from achieving their full potential as a source for retirement income. Citrus Valley Estates, Inc. v. Commissioner, 99 T.C. at 399.

In conjunction with its effort to expand the number of employees participating in employer-financed plans, Congress also placed limits on the amounts of pension contributions and benefits available under those plans.

> [I]t is not in the public interest to make the substantial favored tax treatment associated with qualified retirement plans available without any specific limitation as to the size of the contributions or the amount of benefits that can be provided under such plans.  The fact that present law does not provide such specific limitations has made it possible for extremely large contributions and benefits to be made under qualified plans for some highly paid individuals. While there is, of course, no objection to large retirement benefits in themselves, your committee believes it is not appropriate to finance extremely large benefits in part at public expense through the use of the special tax treatment. * * *

> *      *      *      *      *      *      *

> Moreover, to prevent abuse, the full [section 415(b)(1)] maximum benefit may be paid only to individuals who have 10 years or more service.  Where an individual has served for less than 10 years, the maximum permissible benefit is reduced proportionately. [H. Rept. 93-807, at 35-36 (1974), 1974-3 C.B. (Supp.) 236, 270-271.]

Section 415(a) precludes qualified plans from providing for payment of annual benefits in excess of an amount determined under subsection (b).  Section 415(b)(1) establishes an annual benefit limitation as the lesser of a dollar amount ($75,000, as adjusted under section 415(b)(2), for the years at issue) or 100

percent of the participant's average compensation for his 3 highest paid years with the plan sponsor.  For the years at issue, section 415(b)(5) reduced the subsection (b)(1) dollar limitation as follows:

> (5) Reduction for service less than 10 years.-- In the case of an employee who has less than 10 years of service with the employer, the limitation referred to in paragraph (1) * * * shall be the limitation determined under such paragraph * * * multiplied by a fraction, the numerator of which is the number of years (or part thereof) of service with the employer and the denominator of which is 10.

Thus, a qualified defined benefit pension plan may not provide for payment of benefits in excess of the dollar limitation of section 415(b)(1) as further limited by section 415(b)(5).[6]

In Citrus Valley, we held that section 404(j)(1) limits deductible contributions to the amount necessary to fund the benefits payable under section 415 determined at the time of the contribution in question.  Citrus Valley Estates, Inc. v. Commissioner, 99 T.C. at 447.  The dispute in these cases focuses on the amounts of benefits payable under section 415 determined at the time of the contributions in question.  Specifically, at issue is whether Pallin's and Brody's prior employment with entities other than the plans' sponsors constitutes "service with the employer" as that term is used in section 415(b)(5).

---

[6]     For plan years beginning after Dec. 31, 1986, sec. 415(b)(5) was amended to restrict the sec. 415(b)(1) dollar limitation for participants with less than 10 years of participation in the plan.  See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1106, 100 Stat. 2085, 2424.

We begin with the presumption that respondent's determination is correct, and petitioners have the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Dellacroce v. Commissioner, 83 T.C. 269, 279-280 (1984).  Deductions and credits are a matter of legislative grace, and petitioners bear the burden of proving entitlement to any deduction or credit claimed on their returns.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

In construing a statute, courts generally seek the plain and literal meaning of its language.  United States v. Locke, 471 U.S. 84, 93, 95-96 (1985); United States v. American Trucking Associations, Inc., 310 U.S. 534, 543 (1940).  For that purpose, courts generally assume that Congress uses common words in their popular meaning.  Commissioner v. Groetzinger, 480 U.S. 23, 28 (1987); see also Addison v. Holly Hill Fruit Prods., Inc., 322 U.S. 607, 618 (1944).  Moreover, words in a revenue act generally are interpreted in their "'ordinary, everyday senses'".  Commissioner v. Soliman, 506 U.S. 168, 174 (1993) (quoting Malat v. Riddell, 383 U.S. 569, 571 (1966) (quoting Crane v. Commissioner, 331 U.S. 1, 6 (1947))).

Words with a fixed legal or judicially settled meaning, on the other hand, generally must be presumed to have been used in that sense, unless such an interpretation will lead to absurd results.  See United States v. Merriam, 263 U.S. 179, 187 (1923);

<u>Lenz v. Commissioner</u>, 101 T.C. 260, 265 (1993).  We must rely on the words of the statute as generally understood, for to do otherwise would be to redraft the statute.  <u>United States v. Locke</u>, <u>supra</u> at 93, 95-96; <u>Lenz v. Commissioner</u>, <u>supra</u> at 265 (citing <u>United States v. American Trucking Associations, Inc.</u>, <u>supra</u> at 542-543).

In interpreting any statue, we attempt to determine Congress' intent in using the statutory language being construed. <u>United States v. American Trucking Associations, Inc.</u>, <u>supra</u> at 542; <u>Helvering v. Stockholms Enskilda Bank</u>, 293 U.S. 84, 93-94 (1934); <u>General Signal Corp. & Subs. v. Commissioner</u>, 103 T.C. 216, 240 (1994).  Moreover, where the statute is ambiguous, we may look to its legislative history and to the reason for its enactment.  <u>United States v. American Trucking Associations, Inc.</u>, <u>supra</u> at 543-544; <u>U.S. Padding Corp. v. Commissioner</u>, 88 T.C. 177, 184 (1987), affd. 865 F.2d 750 (6th Cir. 1989).  In addition, we may seek out any reliable evidence as to the legislative purpose even where the statute is clear.  <u>United States v. American Trucking Associations, Inc.</u>, <u>supra</u>; <u>Centel Communications Co. v. Commissioner</u>, 92 T.C. 612, 628 (1989), affd. 920 F.2d 1335 (7th Cir. 1990).

The relevant language in section 415(b)(5) includes "In the case of an employee who has less than 10 years of service with the employer".  There is no dispute that the years of service with the business organization that established and maintained

the plan, that is, Lear or Brody Enterprises, constitute "years of service with the employer" for purposes of section 415(b)(5). The issue we must decide is whether the term "service with the employer" includes service with businesses that antedate Lear and Brody Enterprises. While we have never been faced with this exact issue in the context of section 415(b)(5), we find guidance from the analysis in cases dealing with the meaning of separation from the service as used in section 402(e). See Burton v. Commissioner, 99 T.C. 622 (1992); Reinhardt v. Commissioner, 85 T.C. 511 (1985); Ridenour v. United States, 3 Cl. Ct. 128 (1983). We conclude that, for purposes of section 415(b)(5), "service with the employer" includes service with businesses that antedate the corporation, where formation of the corporation results in a mere formal or technical change in the employment relationship and continuity otherwise exists in the substance and administration of the business operations of the previous business and the corporation. We turn to the parties' respective arguments.

Lear argues that Pallin's years as a sole proprietor and his years with Lear constitute "years of service with the employer" for purposes of section 415(b)(5). Respondent concedes, and it is clear, that Pallin's years with Lear constitute "years of service with the employer" for purposes of section 415(b)(5). Thus, we need only address Pallin's years as a sole proprietor.

On the surface, Pallin's service as a sole proprietor followed by the formation of Lear and the continuation of the medical practice as a corporation technically involved a change in the employer. Lear was the employer after the incorporation, and Lear did not exist prior to that time. This analysis, however, ignores that Pallin continued performing the same services in the corporate form that he had performed as a sole proprietor. There was no lapse in time between the medical practice's transition from a sole proprietorship to a corporation. Pallin continued to own a majority interest in the practice, and the practice remained in Phoenix. Pallin's professional duties and responsibilities did not change under the corporate form, nor did the administration of the medical practice under the corporate form. The composition of the medical practice's staff, physicians, or patients did not change as a result of the transition to corporate form. These factors lead to the conclusion that the administration of the medical practice and the substance of Pallin's business operations remained the same despite the technical change in Pallin's employment relationship after the formation of Lear. Accordingly, we conclude that Pallin's years as a sole proprietor constitute "years of service with the employer" for purpose of section 415(b)(5). To conclude otherwise would elevate form over the obvious continuity in Pallin's service before and after the formation of Lear.

Our conclusion is buttressed by case law addressing separation from the service in which we have looked to the substance of the employment relationship rather than the formal or technical change in that relationship. In <u>Burton v. Commissioner</u>, <u>supra</u>, Burton was a practicing physician. Burton incorporated his medical practice and was the sole shareholder of the professional association. The professional association maintained a qualified pension plan, and Burton was a participant in that plan.

Burton eventually liquidated the professional association. Immediately after the liquidation, Burton resumed his medical practice in the form of a sole proprietorship. The pension plan was terminated, and its assets were distributed to the participants. Burton reported the distribution using the 10-year forward averaging method which had the effect of reducing the tax impact in the year of the distribution. The Commissioner argued that Burton's change in status from a sole shareholder-employee to sole proprietor was merely a change in form and that there had been no separation from the service within the meaning of section 402(e). The Commissioner reasoned that since there was no separation from the service, the 10-year forward averaging method was not available to Burton.

We held that Burton's change of status from that of an employee of a professional association to that of a sole proprietor was not a "separation from the service" within the

meaning of section 402(e)(4)(A)(iii).  We first noted that "On its face", the liquidation of Burton's professional association and the continuation of his medical practice in the sole proprietorship form satisfied the formality of separation from the service.  Burton v. Commissioner, supra at 626.  After reviewing the continuity between Burton's practice as a professional association and the subsequent practice as a sole proprietorship, we concluded that there was only a technical change in the employment relationship that did not result in separation from the service.  Id. at 629.  We stated:  "Our conclusion that there was only a technical change in the employment relationship is supported by the fact that Dr. Burton continued performing the same services as a sole proprietor as he had performed in the corporate form."  Id. at 629-630; see also Reinhardt v. Commissioner, supra (change from shareholder-employee to independent contractor does not constitute separation from the service); Ridenour v. United States, supra (change from employee to partner does not constitute separation from the service); cf. Devinaspre v. Commissioner, T.C. Memo. 1985-435 (employee transfer between unrelated entities constituted separation from the service).  The analysis and reasoning in Burton apply with equal strength to the cases before us.

Similar reasoning has been applied where a partnership converted to a corporation.  See United States v. Kintner, 216 F.2d 418 (9th Cir. 1954) (former partners given credit for past

service with the partnership for purposes of the 3-year eligibility requirement for participation in the association's plan); Farley Funeral Home, Inc. v. Commissioner, 62 T.C. 150 (1974) (former partners permitted to use a year of service as partners to meet the eligibility requirements of the corporate plan). The situations in Kintner and Farley dealt with years of service for participation and vesting. Nonetheless, the rationale of those cases regarding continuity of service supports the conclusion we reach today.

Moreover, the approach we adopt fulfills the congressional objective to prevent abuse, while at the same time giving proper weight to the years that an individual has served. The House report states: "Where an individual has served for less than 10 years, the maximum benefit is reduced proportionately." H. Rept. 93-807 at 36 (1974), 1974-3 C.B. (Supp.) 236, 271. The continuity in Pallin's practice is clear. Pallin continued performing the same services in the corporate form as he had performed as a sole proprietor. We see no abuse in his counting those years as service with the employer for purposes of section 415(b). Precluding Pallin from counting those years as service with the employer would deny him the benefit envisioned by Congress. We now turn to Brody Enterprises.

Brody Enterprises originally argued that the following years constitute "years of service with the employer" for purposes of section 415(b)(5): Brody's years with Brody Enterprises, 1 year

with Ehmann & Waldman when he did not participate in that firm's pension plan, 5 years with Altheimer & Gray, and 4 years in which he allegedly conducted, as a sole proprietor, a private law practice while employed full time with the IRS. After remand of these cases, Brody Enterprises has abandoned the argument that Brody's 1 year with Ehmann & Waldman constitutes "service with the employer." Respondent concedes that Brody's years with Brody Enterprises constitute "years of service with the employer" for purposes of section 415(b)(5). Thus, Brody's 5 years with Altheimer & Gray and 4 years in which he allegedly conducted a private law practice remain at issue. We address first the 4 years in which Brody allegedly conducted a private law practice while employed with the IRS.

Brody Enterprises argues that under section 414(c), Brody's 4 years as a sole proprietor, allegedly conducted while employed by the IRS, must be combined with his years with Brody Enterprises as "years of service with the employer" for purposes of section 415(b)(5). Brody Enterprises has failed to show that Brody conducted a private law practice during the 4 years that Brody was employed by the IRS. Brody testified that in 1970 or 1971 he began a part-time law practice during the time he worked for the IRS. He kept no records of the hours spent on his part-time law practice. He worked for the IRS full time, and there is no evidence of the extent of the alleged part-time practice. We

conclude that these 4 years do not constitute "years of service with the employer" for purposes of section 415(b)(5).

The remaining years in dispute include Brody's 5 years with Altheimer & Gray. We apply criteria analogous to those applied to Lear. We assume that Brody provided legal services for Brody Enterprises and for Altheimer & Gray. Brody owned Brody Enterprises, but there is no indication that Brody had an ownership interest in Altheimer & Gray. Brody Enterprises has shown no relationship between its business operations and those of Altheimer & Gray. We think it unlikely that the clients of Brody Enterprises in Phoenix corresponded with the clients of Altheimer & Gray in Chicago. We have no indication that the personnel at Brody Enterprises related in any way with those at Altheimer & Gray other than, of course, Brody himself. Indeed, Brody Enterprises seems to contend that service with any employer constitutes service with the employer for purposes of section 415(b)(5), but the language of the statute refutes this contention. The only shred of continuity between Brody Enterprises and Altheimer & Gray was the fact that Brody worked for both. Accordingly, we conclude that Brody's 5 years with Altheimer & Gray do not constitute "years of service with the employer" for purposes of section 415(b)(5).

Petitioners contend that section 414(a)(2) anticipates circumstances in which service with a predecessor employer must

be credited as years of service for the employer.  Section 414(a) provides:

SEC. 414. DEFINITIONS AND SPECIAL RULES.

(a) Service for Predecessor Employer.--For purposes of this part--

(1) in any case in which the employer maintains a plan of a predecessor employer, service for such predecessor shall be treated as service for the employer, and

(2) in any case in which the employer maintains a plan which is not the plan maintained by a predecessor employer, service for such predecessor shall, to the extent provided in regulations prescribed by the Secretary, be treated as service for the employer.

No regulations have been issued pursuant to section 414(a)(2).

The cases before us do not involve the situation in section 414(a)(1), in which the employer maintains a plan of a predecessor employer.  Petitioners apparently do not ask us to interpret section 414(a)(2) in their favor, and we doubt such a request would prove beneficial.  See Carver v. Westinghouse Hanford Co., 951 F.2d 1083, 1088 (9th Cir. 1991); Phillips v. Amoco Oil Co., 799 F.2d 1464, 1470-1471 (11th Cir. 1986) (interpreting the ERISA counterpart to section 414(a)(2) and concluding that Congress intended to leave to the Secretary of the Treasury the question of whether to require such service with a predecessor employer be taken into account).  Petitioners instead argue that, in the absence of regulations under section 414(a)(2), the plan sponsor or the plan administrator had the

discretion to include the disputed years as "years of service with the employer" under their respective plans, subject only to the limitation that the determination not be arbitrary or capricious.  Petitioners cite <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), <u>United States v. Kintner</u>, 216 F.2d 418 (9th Cir. 1954), and <u>Farley Funeral Home, Inc. v. Commissioner</u>, 62 T.C. 150 (1974), in support of their argument. In <u>Firestone Tire</u>, the Supreme Court established the standard of review by which a plan administrator's decision to deny benefits is to be reviewed in a challenge under ERISA.  That issue is not raised in these cases.  We find <u>Kintner</u> and <u>Farley</u> relevant only to the extent that the courts examined the substance of the employment relationship as discussed above.  The issue before us is the interpretation of section 415(b)(5).  Congress did not leave that issue to the discretion of plan administrators.

To reflect the foregoing and the concessions by the parties,

<u>Decisions will be entered</u>

<u>under Rule 155.</u>