**Thomas S. BURNS, Jr., on behalf of himself and all others similarly situated and on behalf of the Barnett Employee Savings & Thrift Plan, Plaintiffs,**

v.

**Charles E. RICE, Thompson L. Rankin, Jack B. Critchfield, Rita Bornstein, Remedios Diaz Oliver, Frederick H. Schultz, James L. Broadhead, Alvin R. Carpenter, Stewart Turley, Clarence V. McKee, Marshall M. Criser, and John A. Williams, Defendants.**

No. 98–233–Civ–J–21–A.

United States District Court,
M.D. Florida,
Jacksonville Division.

Dec. 10, 1998.

Robert J. Winicki, Donald W. Weidner, Winicki Law Firm, Jacksonville, FL, for plaintiffs.

David M. Wells, McGuire, Woods, Battle & Boothe, LLP, Jacksonville, FL, Theodore N. Mirvis, Rachelle Silverberg, Wachtell, Lipton, Rosen & Katz, New York City, for defendants.

## ORDER

NIMMONS, District Judge.

This cause comes before the Court on Defendant's Motion to Dismiss (Dkt.31), Plaintiff's Opposition (Dkt.34) thereto, and Defendants' authorized Reply (Dkt.52) thereto.

## I. Motion to Dismiss Standard

■ It is well established that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim." *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505, 506 (5th Cir.1971); *accord Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In evaluating the sufficiency of a complaint for purposes of a motion to dismiss, the factual allegations of the complaint must be accepted as true, *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and viewed in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Of course, the Court is not required to accept as true allegations which state conclusions of law. *Solis–Ramirez v. United States,* 758 F.2d 1426, 1429 (11th Cir.1985).[1]

## II. Factual Background

### Generally

In 1997, a deal was struck whereby Barnett Banks, Inc. ("Barnett") was merged into N.B. Holdings, a wholly-owned acquisition subsidiary of NationsBank Corporation ("NationsBank"). Plaintiff, a former Barnett employee and participant in Barnett's Employee Savings & Thrift Plan ("BEST Plan" or "Plan"), brings this putative class action pursuant to the Employee Retirement and Security Income Act ("ERISA"), 29 U.S.C. §§ 1001–1461, challenging actions taken by the Defendants, the former members of the Board of Directors of Barnett, with respect to the BEST Plan, which actions prevented the operation of a provision of the Plan which would have granted additional benefits to all BEST Plan participants.

### Barnett's Merger

On August 29, 1997, Barnett and NationsBank entered into a merger agreement. (Am.Compl.¶ 9). On November 20, 1997, Barnett and NationsBank filed a joint proxy statement with the Securities and Exchange Commission pursuant to section 14(a) of the Securities and Exchange Act of 1934, which statement was required to contain information specified in Schedule 14A of Regulation 14A issued under that Act. (Am.Compl.¶ 10). The proxy statement disclosed, inter alia, the expected elimination of numerous positions at Barnett and its subsidiaries (Am.Compl.¶ 10) and the payment to various Barnett directors and senior executives of some $48 million under the Barnett Supplemental Executive Retirement Plan (Am. Compl.¶ 11) but made no disclosure "relating to the effect of a change in control under the BEST Plan," (Am.Compl.¶ 17).

By December 11, 1997, Barnett and NationsBank had obtained all necessary regulatory approvals for the merger, subject to a statutory thirty-day waiting period and shareholder approval. (Am.Compl.¶ 12). On December 17, 1997, Defendants, the Board of Directors of Barnett, met and

---

1. *Accord Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998); *Panaras v. Liquid Carbonic Ind. Corp.,* 74 F.3d 786, 792 (7th Cir.1996);

5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 1357 at 315–18 (1990).

passed a resolution that, for purposes of Barnett's BEST Plan, no Change in Control would take place upon shareholder approval of the merger. (Am.Compl.¶ 13). On December 19, 1997, the shareholders of Barnett and NationsBank met separately, and each approved the merger. (Am. Compl.¶ 14). On January 9, 1998, the merger was completed. (Am.Compl.¶ 15).

*Defendant's BEST Plan*

■ Barnett's BEST Plan is an employee retirement savings plan. Reference to the terms of the Plan[2] disclose that employees of Barnett who are eligible can elect to open individual BEST Plan accounts and contribute portions of their salary to that account. Barnett matches those contributions with cash or shares of Barnett stock.

Pursuant to provisions of the Plan authorizing such, the BEST Plan took out an Acquisition Loan[3] to purchase shares of Barnett stock, known as "Financed Shares," which were pledged as security for the Acquisition Loan. These Financed Shares, which were held in a separate account called the "Suspense Account" and were not allocated to the individual accounts of BEST Plan participants, could be used by Barnett to meet its matching obligation under the BEST Plan.[4] As alleged by Plaintiff, and stated in the BEST Plan itself, the Plan, and specifically its Acquisi-tion Loan and Suspense Account components, served as a means of corporate finance. (AmCompl. ¶ 4; Introduction to Best Plan).

As of December 31, 1997, there were 3,337,584 shares of Barnett common stock in the Suspense Account, with a market value of over $200 million, (AmCompl.¶ 21), and over $53 million owing on the Acquisition Loan, (AmCompl.¶ 23).

Section 4.5 of the BEST Plan contains a provision which automatically triggers certain events upon the occurrence of one of the several standard corporate takeover or merger scenarios defined therein. Specifically, § 4.5 provides that immediately upon a "Change in Control," as that term is defined in § 4.5(a)(1)–(5) thereof, Barnett is required to make a contribution to the Plan to pay the entire outstanding balance of the Acquisition Loan; all Financed Shares are then to be released from the Suspense Account; and the released Financed Shares are to be allocated to the accounts of participating employees according to a formula. The Changes in Control defined in § 4.5(a)(1)–(5) include such things as hostile takeovers, asset sales, and mergers.

Section 4.5(a), however, also contains a fail-safe that allows the Board of Directors of Barnett, under certain circumstances, to

---

**2.** Although Plaintiff did not attach a copy of the BEST Plan to his Amended Complaint, Defendants have submitted a copy thereof as an exhibit to their Motion to Dismiss. Because the theories of Plaintiff's Amended Complaint rely on the terms of said Plan, and because Plaintiff is thus clearly on notice of the Plan and its terms, it is proper for the Court to receive this Plan and consider the legal implications of its terms without converting Defendants' motion into one for summary judgment under Rule 56. *See, e.g., In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997) (a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment); *accord Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996); *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991). It should also be noted that

Plaintiff has not objected to Defendants' submission or the Court's consideration of the Plan.

**3.** While the allegations of Plaintiff's Amended Complaint indicate that there were multiple Acquisition Loans, for purposes of simplicity the Court will refer to such simply as the Acquisition Loan.

**4.** Specifically, as explained by Defendants, Barnett annually must contribute to the BEST Plan any amounts due on the Acquisition Loan, which contributions are used to make payments on that loan. Following such contributions, a corresponding portion of the Financed Shares are released from the Suspense Account, which released shares can be used to satisfy Barnett's matching obligation under the BEST Plan.

prevent this automatic triggering of section 4.5 and the resultant disbursement of the Financed Shares from the Suspense Accounts to the Best Plan participants' accounts. Specifically, § 4.5(a) provided, in pertinent part, as follows:

> [N]o Change in Control will be considered to have occurred if, before the time when a Change in Control would otherwise be considered to have occurred, the Board (as it exists before such event occurs) determines that it will not treat the event as a Change in Control.

As set forth above, prior to shareholder approval of the Barnett–NationsBank merger, the Board of Directors of Barnett met and passed a resolution that, for purposes of Barnett's BEST Plan, no Change in Control would take place upon shareholder approval of the merger. Such resolution in fact prevented the distribution of the Financed Shares from the Suspense Account to the individual accounts of the BEST Plan participants.

### Plaintiff's Allegations[5]

Paraphrasing ERISA's statutory definition thereof, Plaintiff alleges that each of the Defendants was a fiduciary with respect to the BEST Plan because he or she exercised discretionary authority or control respecting administration and management of said Plan, including the specific determination pursuant to § 4.5 not to treat the merger as a Change in Control thereunder. (Am.Compl.¶ 28). Also of note is Plaintiff's allegation that no later than November 20, 1997, the date of the filing of the proxy statement, the benefits provided by § 4.5 of the BEST Plan accrued to all eligible employees of Barnett and its subsidiaries. (AmCompl.¶ 20).

Plaintiff alleges that by preventing the operation of § 4.5 (and thereby the distribution of the Financed Shares from the Suspense Account) the Defendants breached their fiduciary duties to the Plaintiff, as such was action in an arbitrary and capricious manner; constituted failure to discharge their duties under the BEST Plan; and constituted failure to act solely in the interests of the participants and beneficiaries of the BEST Plan (¶ 27).

Plaintiff thus seeks, on behalf of himself, all others similarly situated, and the BEST Plan, appropriate equitable relief under § 1132(a)(3) for Defendants' violation of § 1104(a) and remedial relief under § 1132(a)(2) for Defendants' violation of § 1109(a), as well as prejudgment interest, attorney's fees, and costs.

### III. Applicable Law

For purposes of ERISA,

a person is a fiduciary with respect to a plan to the extent

> (i)    he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; or

> \*    \*    \*    \*    \*    \*

> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," *id.* § 1104(a), or he is "personally liable to make good to [the] plan any losses" that result from "breaches [of] any of the responsibilities, obligations, duties imposed" by the Act, *id.* § 1109(a). A plan participant or beneficiary can bring a civil action for appropriate relief under § 1109, *id.* § 1132(a)(2); to enjoin acts violative of ERISA or the terms of the plan, *id.* § 1132(a)(3)(A); or to obtain other equitable relief to redress such violations or

---

**5.** The Court would note, although perhaps of little.moment, that many of the allegations of Plaintiff's Amended Complaint contain preemptive legal arguments, apparently directed at the very issues raised by Defendants' Motion to Dismiss.

enforce other provisions of ERISA or the terms of the plan, *id.* § 1132(a)(3)(B)(i)–(ii).

As the above shows, the keystone of an action under ERISA is the particular defendant's status as an ERISA fiduciary under § 1002(21)(A).[6] Defendants' instant motion raises this legal issue, and Plaintiff's conclusory allegations that Defendants were fiduciaries under ERISA, *see, e.g.,* Am.Compl. at ¶ 27, are insufficient to preclude examination of this legal issue, *see Solis–Ramirez,* 758 F.2d at 1429 (holding that in considering motion to dismiss district court not required to accept as true allegations of complaint that state conclusions of law).

## IV. Discussion

█ It is well established that an employer can also serve as a fiduciary, and in that capacity can administer and manage its own ERISA plan and the plan's assets. *See* 29 U.S.C. § 1108(c) (expressly stating that no part of ERISA prohibits an employer from also being a fiduciary); *see also Gelles v. Skrotsky,* 983 F.Supp. 1398, (M.D.Fla.1997) (citing § 1108(c); noting other courts which have recognized same). When acting in this dual capacity, employers are bound by ERISA's fiduciary obligations only to the extent that they are performing duties within the scope of § 1102(21)(A)'s definition of the term "fiduciary." *See, e.g., Johnson v. Georgia–Pacific Corp.,* 19 F.3d 1184, 1188 (7th Cir. 1994) (citing *John Hancock Mut. Life Ins. Co. v. Harris Trust & Savings Bank,* 510

U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993)).

Two related principles arise from this basic rule: first, an employer owes no fiduciary duty under ERISA when it makes decisions regarding benefits that have not yet vested or accrued to participants in the particular plan; second, an employer owes no fiduciary duty under ERISA when it makes what are known as "plan design decisions," which include decisions regarding the level(s) of benefits to be afforded to plan participants. The Court concludes that each of these principles, discussed below, precludes, as a matter of law, the claims set forth in Plaintiff's Amended Complaint.

### 1. *Employer Decisions Affecting Unaccrued, Non–Vested Benefits*

█ As to the first principle, "ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued," allowing an employer to make such decisions without being subject to liability for breach of fiduciary duty under ERISA. *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986); *Owens v. Storehouse, Inc.,* 984 F.2d 394, 397 (11th Cir.1993) (citing *Phillips* ); *see also Sutton v. Weirton Steel,* 724 F.2d 406, 410 (4th Cir.1983) (holding that employer did not violate ERISA when it modified contingent, unfunded,[7] i.e., unaccrued, benefits); *see also generally Bennett v. Conrail Matched Savings Plan,* 1997 WL 700538 at (E.D.Pa. Oct. 30, 1997) (holding that employer did not act as an ERISA fiduciary when it decided to in-

---

**6.** *See Lockheed Corp. v. Spink,* 517 U.S. 882, 889, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (holding that Court of Appeals therein erred by not first resolving issue of defendant's fiduciary status before determining whether there had been a violation of § 1106, another provision of ERISA which regulates the conduct of plan fiduciaries).

**7.** Plaintiff argues that *Sutton* can be distinguished because it involved unfunded benefits, unlike the instant case. *See* Dkt. 34 at 15–16. However, neither the allegations of

Plaintiff's Amended Complaint nor the terms of the BEST Plan support such an assertion. *See* Am.Compl. at ¶ 19 (recognizing that employer contribution to payoff Acquisition Loan necessary prior to distribution of Financed Shares to Plan participants; BEST Plan § 4.5(b) (same). Additionally, and arguably more importantly, Plaintiff has cited no persuasive authority for the proposition that ERISA's fiduciary obligation applies to actions affecting unaccrued, unvested benefits that are funded.

clude in its plan employees of its merger partner, though such would dilute original plan participants' interest in shares set aside in plan's suspense account, as such shares were unaccrued benefits as to which original plan participants had no vested rights); *Rummel v. Consolidated Freightways, Inc.,* 1992 WL 486913 at (N.D.Cal. Sep. 17, 1992) (holding that employer did not act as an ERISA fiduciary when it allocated surplus from suspense account to certain current and former employees, but not to other former employees, as such benefits were not vested).[8]

■ It is clear that the Financed Shares in the Suspense Account in the instant case were contingent, *see* BEST Plan § 4.5(a) (requiring allocation of all shares in Suspense Account to accounts of all Plan participants only upon a Change in Control, as defined therein), and thus that these benefits were neither accrued, *see* 29 U.S.C. § 1002(23)(B) (defining term "accrued benefit" as "in the case of a plan which is an individual account plan, the balance of the individual's account."),[9] nor vested, *see* BEST Plan § 4.5(b)(4) (stating that all account balances of all participants would be fully vested as of the date of a

Change in Control), at the time the Defendants prevented the triggering of § 4.5 of the Plan. Thus it is clear that the above stated principle applies, precluding Plaintiff's claims herein.

### 2. *"Plan Design" Decisions*

■ As to the second principle, it is well-established that an employer's decisions regarding whether, how much, and to whom to provide benefits, known generally as "plan design" decisions, do not fall within the scope of the defined functions of an ERISA fiduciary, and thus that an employer can make such decisions without being subject to liability for breach of fiduciary duty under ERISA. *See Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Siskind v. Sperry Retirement Program,* 47 F.3d 498, 505 (2d Cir.1995); *Johnson v. Georgia–Pacific Corp.,* 19 F.3d 1184, 1188 (7th Cir.1994). Thus, under ERISA, employers enjoy wide latitude to adopt, modify, or terminate employee benefit plans. *Lockheed Corp.,* 517 U.S. at 891, 116 S.Ct. 1783 (citing *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94, (1995)).

**8.** Both *Bennett* and *Rummel,* which discuss both defined benefit and defined contribution plans, would seem to debunk Plaintiff's argument that, for purposes of determining the fiduciary status of Defendants herein, some distinction should be made between these two types of plans. In any event, the Court's overall conclusion herein does not stand or fall on whether the BEST Plan is characterized as one or the other type of such plans.

**9.** As noted above, Plaintiff's Amended Complaint alleges that "no later than November 20, 1997, the date of the filing of the proxy statement, the benefits provided by § 4.5 of the BEST Plan accrued to all eligible employees of Barnett and its subsidiaries." (Am-Compl.¶ 20). Such, however, is a legal conclusion which the Court is not obliged to accept as true for purposes of considering Defendant's instant motion. *See Solis–Ramirez,* 758 F.2d at 1429. Under § 1002(23)(B)'s definition, for purposes of a defined benefit plan, an accrued benefit is the balance of the individual's account. It is undisputed, and in fact the essence of Plaintiff's

claims, that the Financed Shares in the Suspense Account were never allocated to the individual accounts of Plaintiff or any other BEST Plan participants. Further, it is clear that § 4.5(a) only required allocation of the Financed Shares from the Suspense Account to the Plan participants' individual accounts upon a Change in Control as defined therein; that § 4.5's definition of Change in Control, though it incorporates concepts of the regulations promulgated pursuant to the federal securities laws, does so "as modified by th[at] Section"; that under § 4.5(a)(4) & (5), a Change in Control does not occur until shareholder approval of a merger, consolidation, or sale; and that, as alleged in ¶ 14 of the Amended Complaint, shareholder approval of the merger occurred on December 19, 1997, two days after the Defendants had already determined that no Change in Control would take place for purposes of § 4.5 of the BEST Plan. Thus, it is clear that as a matter of law the Financed Shares in the Suspense Account on December 17, 1997, were not accrued benefits of any BEST Plan participant, including Plaintiff.

### 3. Plaintiff's Various Arguments

Although the Court finds the above principles sufficient to dispose of Plaintiff's claims entirely, some of Plaintiff's arguments that have not been dealt with merit discussion for the sake of completeness and, hopefully, clarity. These are discussed below.

First, citing to *Useden v. Acker,* 947 F.2d 1563, 1574 (11th Cir.1991), Plaintiff asserts that "ERISA contemplates that fiduciary responsibility will be reposed automatically in a party that assumes a discretionary role." Thus Plaintiff argues that, since Defendants exercised discretion regarding the management and control of the Plan, as well as the disposition of its assets when they decided to prevent the operation of § 4.5, they are fiduciaries for purposes of ERISA.[10] The Court agrees with Defendants that *Useden* does not extend so far. The quoted portion of the opinion comes from a general discussion of the farthest possible reach of ERISA's definition of the term fiduciary that can be contemplated, including "theoretical contrivances," irrespective of other considerations, *id.* at 1574; such statement does not discuss the clear authority, discussed above, which holds that decisions which affect unaccrued, unvested rights or other decisions of plan design do not give rise to fiduciary liability under ERISA.

Plaintiff also cites *Varity Corp. v. Howe,* 516 U.S. 489, 502, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), wherein the Supreme Court, in construing the plan administration aspects of § 1102(21)(A)'s definition of the term fiduciary, noted that the ordinary trust law understanding of fiduciary administration of a trust includes performance or duties imposed by, or exercise of powers conferred by, the trust documents. Thus, Plaintiff argues that

since Defendants exercised a power conferred by § 4.5 in precluding the operation of that section, they are fiduciaries for purposes of ERISA.[11] Again, the Court agrees with Defendants that the mere fact that an ERISA plan expressly authorizes a particular action which is otherwise permissible under ERISA free from its fiduciary obligations, does not ipso facto make that action subject to ERISA's fiduciary obligations. Such a conclusion would mean that a plan whose terms expressly recognized caselaw arising under ERISA would actually limit an employer's permissible actions more than a plan that did not recognize such caselaw. Such would be an untenable result. *Cf. Sperry,* 47 F.3d at 505–507 (holding that absence of language in single-employer's plan reserving employer's right to amend plan did not transform amendment into a fiduciary act.) Further, Plaintiff's reading of *Varity* ignores the fact that the case arose in a context where it was not clear whether the employer's challenged action (giving of detailed erroneous plan information and advice) was fiduciary in nature, as opposed to the instant case where clear precedent establishes that the elimination of benefits and decisions of plan design are not fiduciary in nature.

Second, Plaintiff argues that § 4.5 of the BEST Plan requires the Defendants to contribute funds sufficient to pay off the Acquisition Loan (and thereafter distribute the Financed Shares from the Suspense Account to the individual accounts of all Plan participants), making the instant case distinguishable from the authority cited by Defendants, which Plaintiff asserts involved only discretionary employer contributions to plans. In support of this argument, Plaintiff relies on the Plan language. *See* BEST Plan § 4.5(b)(1) ("The Employ-

---

10. This argument basically accepts Defendants' theory that it was entirely within their discretion to preclude the operation of § 4.5. As discussed below, Plaintiff has also argued that § 4.5 mandated Defendants to allow § 4.5 to trigger (causing the Financed Shares

to be allocated to Plan participants), i.e., that Defendants had no discretion regarding § 4.5.

11. This argument necessarily also assumes that Defendants had discretion to preclude the operation of § 4.5.

ers will immediately make a Contribution ... to pay the Outstanding balances on the Acquisition Loans, and the Trustee will immediately pay such balances."). Such a position plainly omits to consider other material provisions of § 4.5. The portion of § 4.5(b)(1) relied upon by Plaintiff contains those provisions in effect upon a Change in Control, as defined therein; such provisions are, of course, subject to the Board's unrestricted ability to determine, prior to its occurrence, that no Change in Control will occur. *See* § 4.5(a). In other words, the provisions of § 4.5(b)(1) become mandatory only in the event that the Board omits to act otherwise, as did not happen here. The authority cited by Defendants in opposition to this argument also supports the Court's conclusion. *See Adams v. LTV Steel Mining Co.,* 936 F.2d 368, 369–70 (8th Cir.1991) (involving plan that allowed early retirement if, inter alia, employee and employer agreed it would be in each other's best interests; holding that employer's decision to deny early retirement based on its conclusion that such would be against its own interest was not a breach of fiduciary duty under ERISA).

Third, Plaintiff argues that because the Defendant's determination not to treat the merger as a Change in Control for purposes of the BEST Plan had the effect of precluding the automatic distribution of the Suspense Account shares, such determination exercised control regarding disposition of Plan assets and was also an act of administration or management under § 4.5 of the Plan. However, as noted above, caselaw makes clear that only action within the terms of § 1002(21)(A) is subject to fiduciary review under ERISA. *See, e.g., Johnson,* 19 F.3d at 1188. As also noted above, caselaw makes clear that decisions affecting unaccrued, unvested benefits and other plan design decisions are not subject to ERISA's fiduciary standards. *See, e.g., Phillips,* 799 F.2d at 1471 (re the former); *Lockheed Corp.,* 517 U.S. at 890, 116 S.Ct. 1783 (re the latter). Thus, because it is clear that Defendant's challenged actions were ones which affect-

ed unaccrued, unvested benefits and also were in the nature of plan design decisions, it is clear that these actions are not subject to ERISA's fiduciary standards.

## V. Leave to Amend

Having thus dismissed all of the Amended Complaint, the only remaining issue is whether to allow Plaintiff leave to amend—that is, whether the dismissal should be with or without prejudice. Circuit precedent requires that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991). The Eleventh Circuit has stated only two exceptions to this rule: (i) where the plaintiff has indicated that he does not wish to amend his complaint, and (ii) where a more carefully drafted complaint could not state a claim under the *Conley* standard. *Id.*

In this case, Plaintiff has not stated that he does not wish leave to amend. Thus the Court would normally presume that Plaintiff would seek such leave. However, as to the second exception stated in *Pitt,* the Court concludes that Plaintiff would not be able to amend his Complaint so as to state any claim against Defendants for breach of fiduciary duty arising out of the Barnett–NationsBank merger, because it is clear as a matter of law that Plaintiff cannot overcome the threshold issue of Defendants' fiduciary status. *See Lockheed Corp.,* 517 U.S. at 889, 116 S.Ct. 1783 (holding that Court of Appeals therein erred by not first resolving issue of defendant's fiduciary status before determining whether there had been a violation of substantive provision of ERISA governing conduct of plan fiduciaries). The dismissal of the Amended Complaint, therefore, will be with prejudice.

## VI. Conclusion

Plaintiff has devoted much of his pleadings and his opposition to the instant mo-

tion to presenting to the Court various allegations and representations about the injustice that has allegedly been perpetrated upon himself and the other BEST Plan participants. Regardless of what one might think of Defendants' alleged actions, it is clear that ERISA imposes no obligations or restrictions upon such conduct. In this regard, the words of the Seventh Circuit are particularly apt:

> [B]ecause ERISA is a highly technical statute [the Court's] part is to apply it as precisely as [possible], rather than to make adjustments according to a sense of equities in a particular case.

*Johnson,* 19 F.3d at 1190.

Upon consideration of the foregoing, it is hereby **ORDERED:**

1. Defendant's Motion To Dismiss (Dkt.31) is **GRANTED,** and Plaintiffs' Amended Complaint is **DISMISSED with prejudice.**

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff.

3. All other pending motions not expressly ruled upon herein are **DENIED as moot.**